[Civ. No. 16621. First Dist., Div. Two. Apr. 25, 1956.]

GEORGE S. COLEMAN, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

Ryan & Ryan and Herbert Chamberlin for Appellant.

Arthur B. Dunne, R. Mitchell S. Boyd, G. Blandin Colburn, Jr., and Dunne, Dunne & Phelps for Respondent.

THE COURT.—Plaintiff, an employee of defendant company, appeals from a judgment on a verdict for defendant in his personal injury action based on the Federal Boiler Inspection Act, (45 U.S.C.A. § 22 et seq.) which declares unlawful the use of unsafe locomotives and appurtenances and thereby supplements the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) He urges mainly that he was deprived of a fair trial because of the reference by defendant before the jury to a previous action by plaintiff against defendant under the same statutes, to the attitude of plaintiff in said action, and to a compromise reached therein; by the introduction over plaintiff's objection of evidence relating to these points and by erroneous instructions relating to the possible effect of said prior circumstances in restricting the injury for which appellant might be entitled to recover in the present action. Insufficiency of the evidence to support the verdict is not a basis of the appeal. We have concluded that appellant's contentions must be sustained.

At the time at which appellant allegedly suffered said two accidents he was in the service of respondent as a fireman. He was first employed in May, 1943. The first acci-

dent happened on February 12, 1950, when he slipped on oil in a roundhouse of respondent injuring his back, for which injury he filed action on April 7, 1950. After several months of conservative treatment in the Southern Pacific Hospital in San Francisco a fusion operation on appellant's lumbar spine was performed there on August 8, 1950. Appellant was in a cast for three months and thereafter wore a back brace. It was the opinion of the surgeons in charge of appellant's case in respondent's hospital based on X-ray pictures showing displacements, that no fusion in the area between the second and third lumbar vertebrae was obtained and that a second operation would probably be required because plaintiff at the time had pain in his back over that area. (It was shown at the trial that the head roentgenologist of the hospital was of the opinion that fusion between the second and third vertebrae was obtained but the surgeons disagreed with this opinion.) Appellant, who in his original complaint had prayed for $75,000 damages based on complete disability for an indefinite period, on June 11, 1951, asked leave to amend by increasing the prayer to $150,000 on the ground that he originally did not know that the operation would not cause a successful fusion and that the injuries would prevent him from working again as a railroad man. During the trial of the action a compromise was reached by which appellant received $40,000 in a check dated August 13, 1951, in full settlement of all claims for injuries allegedly suffered in said accident of February 12, 1950. Dismissal of the action with prejudice was filed August 17, 1951. When late in September, 1951, appellant returned from leave of absence from the hospital, he reported definite improvement in the last six to eight weeks. The improvement continued. The pain disappeared. The reoperation was not performed. In December, 1951, appellant was discharged from the hospital to return to duty January 5th, 1952. He actually worked again as a fireman for respondent from January 7, 1952, until after the second accident in August, 1953. He left off his back brace two months after he returned to work. The improvement which permitted appellant to return to work, notwithstanding the failure—according to the surgeons in respondent's hospital—of the fusion in the area between the second and third lumbar vertebrae, was at the trial in the present action explained by Dr. Flinn, one of said surgeons, as a "fibrous stability," the formation of enough scar tissue between the area to prevent excessive motion; the weak

part in the arch of the back is "held together, undoubtedly, by fibrous tissue; and unless there's something that disrupts that then you don't get the shift in the body of the vertebra." It was the opinion of Dr. Flinn that when appellant was released to go to work (December, 1951) there was such fibrous union, and that if he had had no other injury to his back he probably could have continued to work as a fireman during his life expectancy.

On August 23, 1953, the steam locomotive on which appellant was working as a fireman broke a rod when it was going at a speed of 70 miles an hour, causing a breakdown of said locomotive, accompanied by violent jolting and swaying, threw the engineer to the deck and appellant, according to his testimony, first against an armrest and thereafter with his back and the back of head and neck against a windbreaker. After having taken safety measures both jumped from the locomotive when it was still going. Appellant at the time of the accident did not think he was hurt and made statements accordingly, but three quarters of an hour later he complained to the engineer that his back felt funny and asked him to bring him his flashlight from the engine as he did not want to climb the ladder to it. He, however, worked on the relief engine and continued his work as a fireman until August 28, 1953. He testified that he ascribed certain troubles he felt and of which he complained to his wife to nerves. On August 29 he consulted a Southern Pacific doctor at Phoenix, who referred him to the Southern Pacific Hospital in San Francisco. He was treated by the doctors there and between September 10, 1953, and July 9, 1954, was in and out of the hospital seven or eight times. During this period his symptoms became worse. On July 16, 1954, Dr. Flinn who had taken part in appellant's first fusion operation as junior surgeon performed a refusion operation. Dr. Flinn testified that during the second operation he found movement and no fusion the same as after the first operation. There was still tissue in between the area, but the fibrous union was stretched. Such could have occurred in an accident as described by plaintiff and could cause recurrence of pain. At the time of the trial (September, October, 1954) appellant was still in a cast and it was too early for Dr. Flinn to give a definite prognosis.

The complaint in this action, filed October 2, 1953, alleged the accident of August 23, 1953, violation by defendant of the

federal statutes stated before, and the following injuries suffered by plaintiff as a result thereof:

1. A fracture of a previous spinal graft with fragmentation.

2. A possible ruptured intervertebral disc.

Defendant conceded below, as on appeal, that the liability under the Federal Boiler Inspection Act, *supra*, is absolute (*Urie* v. *Thompson*, 337 U.S. 163, 188 [69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252]) and that defendant would be liable for any injury which had been caused to plaintiff by the alleged accident, but it was denied that plaintiff had suffered any injury as a result of said accident.

The evidence was in conflict. Appellant's earlier denials of injury and later complaints were brought out. Dr. Charmack, an orthopedic surgeon testifying for plaintiff, gave as his opinion on the basis of the hospital record and later X-rays and examinations that the first operation resulted in a fusion and that the upper portion of the graft was broken in the accident of August 23, 1953. The evidence of Dr. Flinn has already been stated.

During defendant's opening statement, in which extensive references were made to plaintiff's previous action, his contentions in said action and the settlement made therein, with a promise to prove "that all these claims that are made here in the contention of permanent disability were made in the past, was settled and disposed of completely," plaintiff protested the injection of any such matter in the case and moved for a mistrial, which motion was denied. The following instruction, given by the court on its own motion and numbered 37 shows most clearly the position of the court in that respect to which appellant objects on appeal and to which he objected below from the beginning:

"You are instructed that it has been proven in this case that plaintiff was previously in another accident while in the employ of the defendant, in which he received an injury to his lumbar spine; that he and the defendant agreed in 1951 as to what amount of damages he was to be paid, and that payment of the agreed upon sum was paid by the defendant to plaintiff.

"You are instructed that if you find that at the time of said settlement in 1951 plaintiff appeared and claimed to be suffering from a permanent injury to his back which disabled and prevented him, in the exercise of ordinary care,

from thereafter performing a substantial part of his work with reasonable continuity in his customary occupation with the defendant, namely, a fireman or in any other occupation in which he might then reasonably have been expected to engage in in view of his station in life and physical and mental capacity, and that they settled the matter on that basis, then plaintiff may not in this action recover damages for any permanent injury to his back allegedly caused in the accident of August, 1953. And this is so even though the condition in the back was thereafter discovered not to be permanently disabling to the plaintiff in the performance of his occupation with the defendant.''

Respondent urges that this instruction correctly states the law, and moreover that, even if such was not the law, the instruction cannot have caused a miscarriage of justice or any prejudicial effect.

Respondent primarily contends that all this instruction told the jury was that plaintiff could not claim to be compensated twice for the same thing. The problem on which the jury was herein instructed is not so simple. It is: If an injured person has received compensation under the cited federal statutes on the basis of a certain probability of permanent disability, he has thereafter recovered to such extent that he is not any more disabled but has resumed his former occupation and he has then suffered a new injury to exactly the same part of the body as the former one, which again causes probability of permanent disability, can he under said statutes recover for the latter probable permanent disability or not? Nobody would deny the victim's right of recovery if the second injury and disability was caused by another responsible person than the first one. This illustrates the evident fact that the second disability caused after a recovery is not ''the same thing'' as the first one. Respondent and the court below in its first ruling relied on language in *Brooks* v. *Rochester Ry. Co.*, 156 N.Y. 244 [50 N.E. 945] to the effect that a person who obtained a general verdict in a personal injury action in which she had alleged among other damage permanent disability to exercise a certain profession, could not in a new personal injury action based on injury in a later accident claim that it caused disability to exercise the same profession. (The defendant in both actions was the same street railway company.) Although the case dates from 1898 it has never been cited for

said rule and we doubt whether it is correct in its generality. It may be noted that in that case the two accidents were not fully five months apart. The same physician testified for plaintiff in both cases. At the first trial she testified that the injuries were likely to be permanent, at the second that plaintiff was gradually recovering from the effects of the first accident but that her injuries in the second accident were likely to be permanent. It was held reversible error to sustain objection to her being cross-examined at the second trial as to her stated testimony at the first trial. The holding was based both on the above stated rule and on the right to impeach the witness. The generality of the rule was restricted by the court's statement ''The two accidents and the two trials were so connected by the proofs on the part of the plaintiff that the defendant had the right to eliminate from the case all claims which entered into the first recovery.'' Moreover the federal statutes here governing were not involved in the case.

 If in some cases such right of the defendant to rely on recovery in a prior action is recognized then it is based on some form of estoppel, which prevents a party who has assumed a particular position in a judicial proceeding to assume an inconsistent position to the prejudice of the adverse party in a subsequent proceeding involving the same parties and questions. This form of estoppel ''has been said to be one of vague application, and in many cases it has been held inoperative, or has not been applied'' (31 C.J.S. 373). It cannot be invoked where the position first assumed was taken as a result of ignorance or mistake (31 C.J.S. 372). The position must be clearly inconsistent so that one necessarily excludes the other. The application has also sometimes been limited by the requirement that to permit one party to change must be unjust to the other party (19 Am.Jur. 710). (See as to this form of estoppel and the many contradictions and uncertainties in its application in general 31 C.J.S. 372-393; 19 Am.Jur. 704-730). Respondent relies with respect to this doctrine of estoppel primarily on *Scarano* v. *Central R. Co. of New Jersey*, 203 F.2d 510, in which case it was held that a railroad employee who had in an injury suit under the Federal Employers' Liability Act asserted and introduced evidence to prove damage consisting in lost ability to earn wages and had obtained $27,750 in a settlement was estopped to bring, about one month thereafter, an action for damages for the employer's refusal to reinstate him as rehabilitated under

the provisions of a collective bargaining agreement. The case states that with respect to such estoppel "each case must be decided upon its own particular facts and circumstances." We see significant distinctions between the Scarano case and the one before us. The most important is that in the Scarano case the employer refused to reinstate the employee, and held him to his claimed disability, whereas in the present case respondent reinstated appellant, thereby not only acknowledging that he was no longer disabled but also cooperating in subjecting him again to risks of the employment for which federal statutes made the employer absolutely liable. ■ If it be assumed for the purpose of argument that the claim of damages because of permanent disability caused by the second accident was in principle inconsistent with the basis of the settlement previously made, then it is still a serious objection to respondent's reliance on such inconsistency that respondent itself sanctioned the same inconsistency in reinstating appellant and thereby subjecting him to new risks. If respondent had made with appellant an express agreement containing the partial exclusion of liability which respondent claims in these proceedings, such agreement would probably be void under the provisions of section 5 of the Federal Employers' Liability Act, (45 U.S.C.A. § 55) which avoids any contract or device which enables a common carrier to exempt himself from any liability of the kind. The point does not need decision because no such express agreement is claimed but it throws serious doubt on the contention that respondent is exempted to said extent as a matter of law.

■ Irrespective of said statutory provisions, the inconsistency between the positions taken by appellant is not sufficiently clear. At the time of the first trial and the settlement a refusion operation was contemplated. In how far that operation would succeed and in how far appellant would be disabled after such operation could evidently not be predicted with certainty. Respondent in whose hospital and by whose physicians appellant has all the time been treated was fully informed as to the medical facts. The sum paid by settlement was far less than the present value of appellant's prospective loss of income during his life expectancy in case of permanent total disability. Although the amount of $40,000 clearly showed that permanent disability was to some extent contemplated, the settlement, like most settlements, must have been based on an element of chance: if appellant would prove to

be permanently disabled the amount would be low, if the disability would prove to be short the amount would be high. It seems contrary to the chance character of such settlement to hold that any claim based on termination of the disability sooner than was considered probable was inconsistent with the basis of such settlement.

The instruction refers to appellant's claim of disability as basis for the settlement and respondent points out allegations and statements of appellant's attorney as showing such claim. Future disability is as a rule not a fact of which one can have knowledge of his own or which he can be considered to warrant. It is symptomatic that one of the statements on which respondent relies is that appellant's attorney urged in his opening statement that he would show "without too much doubt" that if the refusion operation would be successful appellant's back would be stiff so that he would not be able to work as a fireman. Such allegations or statements alone should not be considered a basis of estoppel. This is not only because they are not intended to be relied upon and are not relied upon. Although there is much uncertainty as to the extent to which the required elements of equitable estoppel apply to the form of estoppel here under discussion the Scarano case holds that the requirement of reliance does not apply. It is enough that the claimant plays "fast and loose with the court" by "intentional selfcontradiction as a means of obtaining unfair advantages." The unconscionable character according to that case required to cause an estoppel under the above rule (at least where there is no real estoppel in pais), is absent in this case. For the reasons stated the instruction based on such estoppel seems erroneous in this case.

The same applies to part of instruction 40 given on the court's own motion in which, among the items to be considered in assessing damages is mentioned: "the question of whether he has already been compensated for a permanent disabling back injury" and to a clause inserted by the court in instruction 39 requested by plaintiff as to compensation for loss of earning power reading "unless you find that he has already been compensated by the defendant for those particular losses." The question remains however whether these errors were prejudicial and reversible.

■■■■ Respondent contends that the concededly correctly admitted evidence (including certain evidence to impeach the veracity of plaintiff not here stated), so overwhelmingly shows

that plaintiff was not injured in the last accident, that possible errors in admission of evidence or in instruction cannot have resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½.) The contention is without merit. There is much testimony in the record, both medical and lay, which if believed would substantially support appellant's claim that in the second accident his spine was again injured either by stretching of the fibrous union developed after the first fusion operation or by fracture of the spinal graft made in said first operation. The credibility of said testimony was for the jury only, and even if we were fully convinced that it did not deserve belief—which is not the case—we could not on that ground hold that the result reached was the only possible correct one.

However, respondent also urges that the fact that the verdict was for defendant generally shows that the jury did not reach the question of damages to which the defective instructions according to respondent solely relate. ▮ Respondent relies on the rule that if a jury under otherwise correct instructions returns a general verdict for defendant in a negligence action, error may not be predicated upon the giving of erroneous instructions relative to the issue of damages. (*Church* v. *Payne,* 36 Cal.App.2d 382, 401 [97 P.2d 819]; *Hurd* v. *San Francisco,* 49 Cal.App. 361, 363 [193 P. 507]; *Cook* v. *Los Angeles Ry. Corp.,* 169 Cal. 113, 115 [145 P. 1013].) The rule is not in point here. The action is not based on negligence denied by defendant but on absolute liability conceded in principle. The instructions do not relate to measure of damages only but to the possible exclusion of recovery for certain stated injury on the ground of prior compensation. It is true that there is here in so far an analogy with the situation in the above negligence cases, that a correct application of the erroneous instructions could not have resulted in the denial of all compensation, including compensation for physical and mental suffering caused by the second accident and the ensuing operation. ▮ However, it cannot be said as a general rule, that the misleading and prejudicial effect of an instruction is necessarily restricted to its exact subject matter. So it is generally held that instructions relating to matters not in issue or in evidence may be misleading and reversibly prejudicial. (*Intagliata* v. *Shipowners & Merchants etc. Co.,* 26 Cal.2d 365, 380 [159 P.2d 1]; *Ketchum* v. *Pattee,* 37 Cal.App.2d 122, 132 [98 P.2d 1051]; *Strandt* v. *Cannon,* 29 Cal.App.2d 509, 513 [85 P.2d 160]; *Buttrick* v. *Pacific Elec. Ry. Co.,* 86 Cal.App. 136, 139-140 [260 P. 588];

*Gregg* v. *McDonald,* 73 Cal.App. 748, 758 [239 P. 373].) The above stated rule of the negligence cases is justified because there is so little connection between the question of negligence and the one of damages that an erroneous instruction as to damages cannot be expected to influence the jury as to the question of liability for negligence. ▮ Here, however, there is not such a clear disconnection and the erroneous injection of the question of previous compensation for the main injury into the trial and into the instructions may well have confused the jury and led it to consideration of the question not submitted to it whether the amount of $40,000 received was sufficient to compensate appellant for his injuries in both accidents. This explanation of the result reached seems at least as probable as the one given by respondent, to wit, that the jury believed that appellant was not at all injured in the second accident and that he subjected himself to the suffering of the second operation for the purpose of compensation only. Under these circumstances the error found must lead to reversal.

▮ Appellant also complains of an instruction of a different kind. Instruction 44 given at the request of defendant as one of several instructions on aggravation of a preexisting condition contains the following sentence: "If the plaintiff was suffering from a pre-existing condition and he did not receive any injury which aggravated it, the defendant is entitled to your verdict." The error in the sentence is that it makes a verdict for defendant dependent on absence of aggravation of preexisting conditions only, thereby excluding from consideration any other form of injury. However, this sentence was part of an instruction on aggravation of preexisting condition only. There were other instructions, which clearly said that defendant was "liable for any injury suffered by plaintiff" resulting from violation of the Boiler Inspection Act (18) or "for the injuries, loss or detriment sustained by him" (28.) Considering as we must the instructions as a whole and from the standpoint of their probable effect on the jury (*Wells* v. *Lloyd,* 21 Cal.2d 452, 458 [132 P.2d 471]) we must conclude that in itself this defect would not be prejudicial or justify reversal. At most it may have added to the confusion caused by the repeated injection of the question of previous compensation into the case.

Appellant contends that the introduction of the evidence complained of was justified for other purposes than the one stated in the instructions, which we have found erroneous. We

have decided that the introduction of the evidence combined with the opening statement and said instructions was prejudicial to appellant and requires reversal. The question of the admissibility of the evidence for certain other purposes may however be of importance for a retrial of the case.

 It is said that the amount of the prior settlement was admissible to show the seriousness of the prior injury, citing *LeBlanc* v. *Browne,* 78 Cal.App.2d 63, 75 [177 P.2d 347]. In that personal injury case, where the plaintiff denied that she had trouble with her right eye prior to the accident, evidence that some years previously she had sued a doctor for injury to that eye was held correctly admitted with an instruction to disregard it "except in so far as it goes to the injury of this plaintiff and the condition of her eyesight." In this case appellant does not deny his prior injury, and a physician of respondent who took part in the treatment and operation of appellant after each of the accidents testified in detail as to the condition of plaintiff observed at all times involved. Under these circumstances the amount of the prior settlement is of so little materiality for the purpose of showing the extent of the prior injury that this ground must be considered fictitious and it is so prejudicial in confusing the issues that exclusion may well be required. It is said in *Adkins* v. *Brett,* 184 Cal. 252, 258-259 [193 P. 251]: "If the point to prove which the evidence is competent can just as well be proven by other evidence, or if the evidence is of but slight weight or importance upon that point, the trial judge might well be justified in excluding it entirely, because of its prejudicial and dangerous character as to other points." See also the following statement in 31 Corpus Juris Secundum 869: "Evidence, although logically relevant, may and should be excluded where it will have an undue tendency to confuse or mislead the jury, . . . as where it would draw into the case issues foreign to the litigation . . ." However, the matter is largely in the discretion of the trial judge, and the possibility that the evidence on retrial may differ from that received at this trial prevents us from expressing our opinion more definitely. If the court should find reason to permit the introduction of said evidence, plaintiff would at any rate be entitled to protection against misuse of it by a clear instruction restricting its competency to the extent of the prior injury. (*Adkins* v. *Brett, supra,* p. 258.)

It is urged that evidence of prior proceedings and settlement was admissible to show that plaintiff was apt to make

extravagant claims and unsupported complaints of pain in the same situation when such was to his financial advantage. In this manner the evidence would in essence be used for the impeachment of appellant by the showing of one purported instance of untruthfulness. ■ "Specific bad acts, or specific instances of untruthfulness, cannot be shown for the purpose of impeaching a witness" (*People* v. *Arrighini,* 122 Cal. 121, 126 [54 P. 591]; Code Civ. Proc, § 2051). The evidence is the more objectionable for said purpose because there is no proof, but only an imputation by respondent of untruthfulness of appellant in the first proceedings. According to the evidence of respondent's surgeon Dr. Flinn the improvement and deterioration which appellant stated and on which he based his conduct could be medically explained. As said before, the injuries in the first and in the second accident are different matters and future disability is not a subject on which a layman like appellant can have knowledge of his own so that impeachment by inconsistent statements is not involved. The fact that appellant was not only a witness but also the plaintiff in the action does not change the exclusionary rule. The cases relating to actions of fraud on which respondent relies are wholly inapplicable. They are exceptions to the general rule that other offenses of the accused are not relevant to establish the main charge (*Atkins Corp.* v. *Tourny,* 6 Cal.2d 206, 215 [57 P.2d 480]). In our case no issue of fraud was joined and no other fraudulent misrepresentations were involved. We hold that evidence of the prior proceedings and settlement and of appellant's contentions in that respect was not admissible for the purpose last stated.

The judgment is reversed.

A petition for a rehearing was denied May 25, 1956, and respondent's petition for a hearing by the Supreme Court was denied June 20, 1956.