[No. B109188. Second Dist., Div. Four. Feb. 3, 1999.]

TERRY DRAIN, Plaintiff and Appellant, v.
BETZ LABORATORIES, INC., et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Proceedings Below and parts IA., II, and III.

952

**COUNSEL**

Henry J. Josefsberg for Plaintiff and Appellant.

Heller, Ehrman, White & McAuliffe, Carlos Solis, Steven M. Friedman and
Maria T. CeloCruz for Defendants and Respondents.

**OPINION**

**CURRY, J.**—This case involves claims for racial harassment and wrongful
termination by appellant Terry Drain against his former employer, respon-
dent Betz Laboratories, Inc. (Betz), and his former supervisors, respondents
Robert Van Aken and Richard Miller. The court granted summary judgment
in favor of respondents. In our original opinion filed May 13, 1998, we
affirmed the judgment. Thereafter, we granted a petition for rehearing in
order to resolve certain issues related to the grant of summary judgment on
the harassment claim in favor of the individual defendants. Having read and
considered the parties' supplemental briefs and the arguments raised at oral
argument, we again affirm.

### FACTUAL BACKGROUND

Appellant worked as a chemical operator for Betz for 13 years until his
termination in March or April of 1995. Approximately six months prior to
his termination, Drain had become disabled and was absent from his em-
ployment on short-term disability leave. Under Betz's written policy, em-
ployees were permitted to take up to six months' disability leave, after which
time they would be terminated if they were still unable to return to their
jobs.[1] Appellant attempted to return to work in March, but was unable to
perform certain tasks assigned to him on that day.

---

[1] As stated in the employee handbook, if an employee was "unable to work because of an
illness or injury that lasts more than 10 days, the Short-Term Disability (STD) Plan pays

On March 24, 1995, appellant submitted a statement of claim for long-term disability benefits. Where the form asked which of his regular job duties he was unable to perform, he responded "all duties" and to "Please see doctors report for return date to work." Appellant listed the following job duties on the form: "make out batch sheet formulations—collect the raw materials using a fork lift—make the chemical formulations in huge vatts [*sic*]—do quality assurance [for] the completed work—load tanker trucks, lead storage tanks—also help train newly hired worker." The attached doctor's report stated that appellant was totally disabled from his regular occupation as well as for "any occupation." The doctor gave a return-to-work date of May 8, 1995. Betz responded with an April 13, 1995, letter from Glenn Wilson, its human resources manager, that "in accordance with your doctor's certificate dated March 28, 1995, this letter will confirm company policy on this matter. Since you have continued to be disabled at the end of your six months of Short Term Disability, your employment has been terminated."

On August 29, 1995, appellant presented a claim for workers' compensation benefits, stating that he had a continuing disability which had begun on September 19, 1994. He sought indemnity for both temporary and permanent disability. He claimed injury to his "[n]ervous system, psyche, internal, [and] cardiac," as the result of his "[u]sual and customary" duties and "job stress and harassment."

In May of 1996, the parties settled the workers' compensation claim utilizing a standardized Department of Industrial Relations "compromise and release" form. The settlement agreement stated that appellant had sustained the following injuries: "stress, nervous system, psyche, internal, cardiac, digestive system, hemorrhoids, anal ulcers, harassment/discrimination and any and all body parts identified as injured in the medical reports herein." In a section reserved for a brief description of the evidence the employer would offer, the parties stated that Van Aken and Miller would testify that "the applicant Terry Drain was not harassed or discriminated against (including racial discrimination)" and that the defense medical expert would report "there was no evidence of harassment or discrimination." The agreement also provided: "Upon approval of this compromise agreement by the Workers' Compensation Appeals Board or a workers' compensation judge

---

benefits." Benefits began on the 11th work day of the disability and continued for up to 6 months, depending on the employee's length of service. After the employee exhausted unused vacation days and benefits, "Betz will place you on unpaid short-term disability for the remainder of the six month short-term disability period, at which time your employment will be terminated."

and payment in accordance with the provisions hereof, said employee releases and forever discharges said employer and insurance carrier from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury, including any and all liability of said employer and said insurance carrier and each of them to the dependents, heirs, executors, representatives, administrator or assigns of said employee." Elsewhere the agreement stated: "Applicant agrees that in consideration of payment by defendant as indicated herein, any and all of the above issues and claims as well as all other issues covered in this Compromise and Release Agreement, shall be deemed fully resolved. The parties by this settlement intend to settle any claims that the applicant may have against defendant for industrial injuries while in the employment of defendant/employer, whether occurring on a specific date or over a period of time and whether or not specifically recited in this Agreement." It also contained an express waiver of Civil Code section 1542 rights[2] for "all unknown and unanticipated injuries and damages resulting from such accident, casualty, and/or employment . . . ."

In the meantime, in May of 1995, appellant submitted a claim to the California Department of Fair Employment and Housing (DFEH) based on having been "terminated" by "Bob VanAken [*sic*] or Betz Lab Inc. (supervisor) or Glen [*sic*] Wilson[,] Manager Human Resources." Appellant's DFEH complaint was directed against respondents Betz and Van Aken only.

PROCEEDINGS BELOW*

. . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I

A.*

. . . . . . . . . . . . . . . . . . . . . . . .

---

[2]Civil Code section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

*See footnote, *ante*, page 950.

## B.

 Appellant contends the trial court erred in applying the doctrine of judicial estoppel to the statements he made in his application for disability benefits and in the settlement of his workers' compensation claim.[7]

Respondents established in the summary judgment motion that appellant filed a claim for workers' compensation benefits in which he stated his disability was continuing from September 19, 1994, to August 29, 1995, and sought compensation for permanent disability as of August 29, 1995. They also established that in March of 1995, appellant submitted a long-term disability form to the company in which he claimed inability to perform any of his job-related duties and in support of which he submitted a physician's report confirming that he was totally disabled from performing any occupation. After reviewing the evidence, the trial court ruled that appellant's claims were "barred by estoppel due to his binding admissions of total temporary disability in his worker[s'] compensation proceeding . . . ."

 In *Coleman v. Southern Pacific Co.* (1956) 141 Cal.App.2d 121 [296 P.2d 386], the court recognized a "form of estoppel, which prevents a party who has assumed a particular position in a judicial proceeding to assume an inconsistent position to the prejudice of the adverse party in a subsequent proceeding involving the same parties and questions." (141 Cal.App.2d at p. 128.) According to the court, "[t]his form of estoppel 'has been said to be one of vague application, and in many cases it has been held inoperative, or has not been applied' (31 C.J.S. 373). It cannot be invoked where the position first assumed was taken as a result of ignorance or mistake (31 C.J.S. 372). The position must be clearly inconsistent so that one necessarily excludes the other. The application has also sometimes been limited by the requirement that to permit one party to change must be unjust to the other party (19 Am.Jur. 710)." (*Ibid.*)

The doctrine of judicial estoppel was applied in *Billmeyer v. Plaza Bank of Commerce* (1995) 42 Cal.App.4th 1086 [50 Cal.Rptr.2d 119] where a bankrupt company failed to report as an asset a potential claim against its lender and then sued the lender separately, contending that its improper practices caused the bankruptcy. The court affirmed a judgment in favor of the lender

---

[7]Respondents stated in their brief that the decision of the appellate court in *Prilliman v. United Airlines, Inc.* (1997) 53 Cal.App.4th 935 [62 Cal.Rptr.2d 142] "rejected application of the federal doctrine of judicial estoppel to state law discrimination claims" and that they did not base their opposition to the appeal on the ground that appellant's claims were barred by the doctrine of judicial estoppel based on his earlier admissions of total disability. We believed that respondents overstated the effect of the decision in *Prilliman* and asked the parties to discuss the issue of judicial estoppel in supplemental letter briefs.

based in part on " '[t]he federal doctrine of judicial estoppel' " which " 'precludes a party from asserting a position in a judicial proceeding which is inconsistent with a position previously successfully asserted by it in a prior proceeding. "Thus, the 'essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.' [Citation.]" [Citation.] The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary. [Citations.] The doctrine does not require reliance or prejudice before a party may invoke it.' [Citation.]" (*Billmeyer* v. *Plaza Bank of Commerce, supra,* 42 Cal.App.4th at p. 1092, quoting *Southmark* v. *Trotter, Smith & Jacobs* (1994) 212 Ga.App. 454 [442 S.E.2d 265, 266-267]; accord, *In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 850 [21 Cal.Rptr.2d 642] ["Judicial estoppel is an equitable doctrine aimed at preventing fraud on the courts. It is applied to keep litigants from playing 'fast and loose with the court.' [Citation.]"].)

 The doctrine of judicial estoppel has had particular significance in cases involving the Americans With Disabilities Act of 1990 (42 U.S.C. §§ 12101-12213 (hereafter ADA).) Some claimants would successfully recover workers' compensation benefits based on total disability and then bring separate civil lawsuits against their employers for discrimination for failure to make reasonable accommodation under the ADA, forcing the courts to reconcile these two seemingly contradictory positions. In *Dush* v. *Appleton Elec. Co.* (8th Cir. 1997) 124 F.3d 957, for example, the employee claimed that her termination violated the ADA because she was a qualified individual with a disability and could have continued to do her job if the employer had offered reasonable accommodation. In the meantime, she was found totally disabled for purposes of Nebraska's workers' compensation law. On appeal after dismissal of her ADA claim, she argued that "because the ADA includes the concept of 'reasonable accommodation,' whereas workers' compensation law does not . . . she could have been totally disabled under Nebraska law, but still have been able to perform the essential functions of her job with a reasonable accommodation (namely, reduced hours)." (124 F.3d at p. 964, fn. omitted.) The court disagreed, stating that the workers' compensation referee had specifically ruled that the plaintiff was " 'unable to continue [existing] light duty employment on any long term sustained basis,' " and affirmed summary dismissal of the ADA claim. (*Id.* at p. 965.) The court noted that "[a] significant number of federal courts have . . . decided that a person who characterizes herself as 'totally disabled' in order to receive state, federal, or even insurance benefits will normally be estopped from proving that she is a qualified individual with a disability within the meaning of the ADA or similar state laws. [Citations.]" (*Id.* at pp. 961-962.)

In *Rissetto v. Plumbers and Steamfitters Local 343* (9th Cir. 1996) 94 F.3d 597, judicial estoppel was applied in an age discrimination FEHA claim (California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)) where the employee received workers' compensation benefits for temporary total disability. The employee's civil suit against her employer was premised on the theory that she had been able to perform her job but that she had been constructively discharged. The Ninth Circuit found that theory to be inconsistent with the basis of the workers' compensation award: "[P]laintiff claimed and obtained money on the basis of an assertion that she had an 'inability to work,' indeed a 'total' inability to earn income. Yet she claims in this lawsuit that she was performing her job adequately and that defendants' cutting her down to one or two days per week was a mere pretext for age discrimination, rather than an appropriate response to her physical inability to perform her job. [¶] Plaintiff cannot be permitted to recover money twice on these inconsistent positions. We hold that, having obtained a favorable [workers' compensation] settlement based on her assertion that she could not work, plaintiff was estopped from claiming that she was performing her job adequately." (*Id.* at pp. 605-606.)

After reviewing these authorities as well as others from a number of state and federal jurisdictions, the court in *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171 [70 Cal.Rptr.2d 96], concluded that as a matter of state law the doctrine of judicial estoppel should apply when: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake. [Citations.]" (60 Cal.App.4th at p. 183.) Concerning the third factor, the court further held that because judicial estoppel is an equitable doctrine, it could not "rule out the possibility that, in a future case, circumstances may warrant application of the doctrine even if the earlier position was not adopted by the tribunal. [Citation.]" (*Id.* at pp. 183-184, fn. 8; see *Allen v. Zurich Ins. Co.* (4th Cir. 1982) 667 F.2d 1162, 1167 ["Though perhaps not necessarily confined to situations where the party asserting the earlier contrary position [has] prevailed, [judicial estoppel] is obviously more appropriate in that situation. [Citations.]"].)

In *Jackson*, the employee had received a stipulated workers' compensation award based on the agreed finding that he needed a " "work environment free from emotional stress and strain and no heavy work . . . .' " (*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at p. 177.) The employer then terminated him because his job function as safety

police officer necessarily involved stress, and an ADA lawsuit ensued. On this record, the appellate court believed ". . . the elements of judicial estoppel have been satisfied. First, Jackson has taken two positions: In the workers' compensation proceeding, he agreed with Dr. Low's assessment that he had to have a stress-free job; in this action, he claims that he could perform the essential functions of a safety police officer III. Second, both positions were taken in judicial or quasi-judicial administrative proceedings. Third, Jackson was successful in asserting the first position: The requirement of a stress-free job appeared in the parties' 'Stipulations with Request for Award' (which Jackson and his attorney signed), and the workers' compensation judge adopted the stipulations in making the award. Fourth, the two positions are totally inconsistent: Jackson cannot have a stress-free work environment and perform the essential functions of a safety police officer III. The County has classified that job as 'arduous' for good reason, and Jackson has admitted that all of the duties of safety police officer III involve stress. Nor was a reasonable accommodation possible. Despite the County's efforts to rehabilitate Jackson and find him an alternative job, he withdrew from the rehabilitation program and indicated that the only job he wanted was that of safety police officer III. Finally, Jackson's first position—that he needed a stress-free work environment—was not the result of ignorance, fraud, or mistake. Jackson knowingly agreed to the work restriction based on the report of Dr. Low, who evaluated Jackson at his attorney's request. The parties' stipulation recited the work restriction in language taken almost verbatim from Dr. Low's report." (*Id.* at pp. 190-191, fns. & italics omitted.)

Appellant's claim, although phrased in terms of racial discrimination, is analogous to an ADA claim in that he is contending his employer should have accommodated his disability by giving him a light duty position because it had done the same for White employees. The evidence propounded by respondents in support of summary judgment established that after receiving compensation for short-term disability for six months, appellant presented a claim to his employer for long-term disability benefits in which he swore he was disabled from performing all of his duties and a physician's report which found him disabled from "any occupation." This formed the basis for his later workers' compensation application whereby he sought total temporary disability from September 19, 1994, to August 29, 1995, "and continuing," and received an award through compromise and settlement, approved by the workers' compensation referee. Although no factual findings were incorporated in the referee's approval of the parties' compromise and release, that is not fatal. As the court said in *Jackson,* "circumstances may warrant application of the doctrine even if the earlier position was not adopted by the tribunal. [Citation.]" (*Jackson* v. *County of Los Angeles, supra,* 60 Cal.App.4th at p. 184, fn. 8.) Looking at the record

here, we are persuaded that the trial court's application of judicial estoppel was supported by substantial evidence. (See *In re Marriage of Dekker, supra,* 17 Cal.App.4th at p. 850 ["A trial court's determination on the issue of estoppel is a factual finding which will be upheld if supported by substantial evidence. [Citation.]"].)[8]

*Prilliman* v. *United Air Lines, Inc.,* does not mandate a different result. In *Prilliman,* the plaintiff was an airline pilot with AIDS receiving disability benefits which were payable " 'as long as [he] remain[ed] permanently grounded and not re-employed by the Company in a flight qualified position until age 60 or for 5 years, whichever is greater.' " (53 Cal.App.4th at p. 962.) Commercial pilots must regularly undergo comprehensive physical examinations administered by a Federal Aviation Administration (FAA) examiner in order to receive a medical certificate enabling them to pilot an aircraft, and those who have AIDS or an AIDS-defining condition, such as Kaposi's sarcoma, are not eligible to receive the necessary medical certificate. (See *id.* at p. 941.) After discovery of his condition, Prilliman was grounded and placed on medical disability without being considered for any other position. He sought to prove in a claim brought under the provisions of the FEHA that United had failed to reasonably accommodate his disability in the workplace. The court reversed summary judgment granted in favor of United. In so doing, it explained that the position taken in the application for disability benefits was not "clearly inconsistent" with the position taken in the lawsuit because "the receipt of United disability benefits [was] based on Prilliman's grounding and lack of reemployment by United in a flight qualified position, matters as to which there is no dispute herein. . . . [T]he receipt of such disability benefits does not answer the question as to whether United violated the FEHA by failing to make known to Prilliman other suitable job opportunities within United that do not require medical certification from the FAA." (*Id.* at pp. 962-963.)

*Prilliman* was followed recently in *Bell* v. *Wells Fargo Bank* (1998) 62 Cal.App.4th 1382 [73 Cal.Rptr.2d 354]. There, the plaintiff, a bank examiner with HIV employed by Wells Fargo, sought to establish that the company had failed to reasonably accommodate his disability by discontinuing a

---

[8]In his petition for rehearing, appellant protested use of the "substantial evidence" standard in view of the fact that the matter was before the trial court on summary judgment. Whether or not to apply judicial estoppel is a question of law for the trial court which can be made in the context of a summary judgment motion where none of the facts material to the court's decision to apply judicial estoppel are disputed. (See, e.g., *Jackson* v. *County of Los Angeles, supra,* 60 Cal.App.4th at pp. 191-192; *Billmeyer* v. *Plaza Bank of Commerce, supra,* 42 Cal.App.4th at p. 1096.) The evidence in the record which we have recounted supported the trial court's ruling, and appellant raised no triable issue of fact concerning any of the determinative factors.

policy which allowed him to telecommute one day a week. Prior to filing the lawsuit, the plaintiff had quit his job, and applied for and received state and federal disability benefits from insurance and Social Security. Wells Fargo obtained summary judgment on the sole ground that " 'Plaintiff is estopped from claiming disability discrimination in violation of Government Code Section 12940, *et seq.*, because he has admitted that he cannot perform the essential functions of his job' on his disability applications." (*Bell* v. *Wells Fargo Bank, supra,* 62 Cal.App.4th at p. 1384.) The court concluded that Wells Fargo had not adequately shown that the plaintiff had taken totally inconsistent positions in the two proceedings. "Wells Fargo's proof is essentially a series of statements made in connection with plaintiff's disability applications, statements to the effect that 'sickness' rendered him 'disabled' and unable to perform 'his regular and customary work.' But the meaning of these statements cannot be determined without knowing what plaintiff meant by 'regular and customary work.' For example, was he referring to his job as he knew it before Wells Fargo changed his existing accommodation or was he referring to the job at the time he was completing the benefits application, which is to say, after Wells Fargo had refused to continue the accommodation and after his employment had ended?" (*Id.* at pp. 1387-1388, fn. omitted.) The court pointed to evidence submitted by the plaintiff, including a disability questionnaire in which he stated he anticipated returning to his previous job based on receiving "reasonable accommodations," and declarations from treating physicians who stated that plaintiff could have continued working if the prior conditions were restored. From this the court concluded: "Plaintiff's [disability application] statements are not inherently and totally inconsistent with his litigation position that he could have continued working had his accommodation been left in place. It is possible to reconcile the statements made by plaintiff at different times about the nature and extent of his disability. The statements . . . do not necessarily exclude his subsequent litigation posture." (*Id.* at p. 1388.)

Unlike the plaintiff in *Prilliman*, appellant did not seek disability benefits based on inability to perform a specific job function; unlike the plaintiff in *Bell*, appellant's disability application was not susceptible of varying interpretations. Appellant sought and obtained recovery based on total inability to perform any of his job functions or any other occupation. The evidence of inconsistency in the positions taken in the disability proceeding and the current lawsuit supports the trial court's application of the judicial estoppel doctrine.

II, III*

. . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 950.

## DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 21, 1999.