[No. B133413. Second Dist., Div. Four. Nov. 30, 2000.]

SHARI THOMAS, Plaintiff and Appellant, v.
BARRY GORDON et al., Defendants and Respondents.

**COUNSEL**

Esner & Chang, Stuart B. Esner and Andrew N. Chang for Plaintiff and Appellant.

Haight, Brown & Bonesteel, Barry Z. Brodsky, Thomas N. Charchut and Robin M. McConnell for Defendants and Respondents.

**OPINION**

**CURRY, J.**—Appellant Shari Thomas, M.D., brought suit against respondent Barry Gordon, her accountant, and respondent Barry Gordon, an accountancy corporation (collectively referred to hereafter as respondent). Appellant contended that respondent breached a duty of care owed to her and/or committed fraud or misrepresentation by failing to keep her apprised of the financial affairs of two corporations. Appellant held no shares in the corporations, and was not an officer or director in either of them, but she claims an equitable interest by virtue of having transferred assets to the corporations in order to keep those assets out of the hands of her creditors. We affirm the trial court's grant of summary judgment in favor of respondent.

### FACTUAL AND PROCEDURAL BACKGROUND

The complaint alleges that in or around June 1993, appellant became concerned about her financial future as the result of disputes with doctors with whom she had shared office space. At that time, appellant was engaged in a romantic relationship with Wanda Joy Woodruff. According to the complaint, appellant and Woodruff met with respondent in August 1993 and he advised them to set up a medical clinic which would be entirely owned by a corporation, Women's Health & Behavioral Medicine (Women's Health). Women's Health was to be owned by a corporation called Nationwide Professional, Inc. (Nationwide), the shares of which were to be held by a

"physician friend" of appellant's.[1] Respondent allegedly knew that "though Thomas would not have an ostensible ownership interest in Women's Health, Women's Health would be funded almost entirely by Thomas' medical practice" and "agreed to protect Thomas' interest in Women's Health, to advise Thomas as to the financial condition and financial affairs of Women's Health and to inform Thomas of any material changes to the financial affairs and financial condition of Women's Health."

The complaint alleges that Women's Health began operations in December 1993 and ceased doing business in November 1996. Woodruff owned all shares of its parent company, Nationwide.[2] Respondent was the accountant for Women's Health and also did work for appellant, preparing her personal tax returns. The complaint alleges that respondent breached a duty of care or contractual duty owed to appellant and/or committed fraud or misrepresentation by: representing other parties with conflicting interests (i.e., Woodruff and Women's Health); failing to advise appellant of the importance of having a separate accountant to represent her interest in Women's Health; failing to advise appellant that Woodruff was taking excessive sums from Women's Health; advising appellant that Woodruff was running Women's Health in a competent manner and was taking only those monies to which she was entitled; failing to advise appellant that it was improper to set up Women's Health to protect herself from creditors; failing to warn appellant against contributing all of her income to a corporation over which she had no authority; failing to permit appellant to examine the books and records of Women's Health; and failing to advise appellant that "Woodruff had transferred the ownership of Women's Health to herself, that Woodruff was not a physician, and that ownership of Women's Health by Woodruff was illegal and improper and placed [appellant's] medical license at risk."

Respondent moved for summary judgment, establishing in his moving papers the following facts, which appellant did not dispute: (1) Women's Health was set up in 1993 by appellant's former accountant, William Slattery, Jr.; (2) Women's Health was organized to shelter appellant's assets from creditors and potential creditors; (3) Women's Health was owned by a Nevada corporation, Nationwide, which was set up by appellant's former attorney, Mark Geyer; (4) respondent did not have any part in helping appellant, Slattery, or Geyer set up the Women's Health/Nationwide corporate structure and did not meet appellant until after the structure was set up; (5) appellant was not an officer, director, or shareholder of Women's Health

---

[1] As we will see, these allegations are entirely untrue. Appellant stated in a declaration that she met respondent in 1994, one year after the corporations were established.

[2] The complaint does not explain how the shares ended up in Woodruff's hands given the earlier allegations that they were to be owned by a physician friend of appellant's.

and made the decision to avoid those roles for the purpose of protecting her assets from creditors before engaging respondent.

Respondent further established that in March 1995, appellant filed a bankruptcy petition, including a schedule of assets and statement of financial affairs, signed under penalty of perjury, which did not include mention of any type of interest in either Women's Health or Nationwide. Appellant filed amended schedules in August 1995, again failing to list any interest in Women's Health or Nationwide, and affirming under penalty of perjury that she had listed " 'all [of her] assets and property, of any nature.' " Appellant filed a second bankruptcy petition in May 1996, again leaving out any mention of Women's Health or Nationwide in her schedule of assets and statement of financial affairs.

In his memorandum of points and authorities, respondent pointed out that the undisputed facts established he had not advised appellant prior to the formation of the corporations, and had begun to represent the parties only after they were set up by her previous advisers. He argued that in his position as the accountant for Women's Health and Nationwide, his duty was to the corporations and their officers, directors, and shareholders. Because of appellant's statements under penalty of perjury in the bankruptcy petitions, appellant was precluded by the principle of judicial estoppel from claiming an interest, equitable or otherwise, in Women's Health or Nationwide. Accordingly, appellant had no standing to bring the lawsuit.

The court granted the motion for summary judgment, stating in its order that the doctrine of judicial estoppel applied because "[i]n multiple unrelated bankruptcy proceedings, [appellant] declared under oath to the bankruptcy courts and her creditors that she had no interest, legal or equitable, in the corporations named [Women's Health] or [Nationwide]." The court found that appellant's claims "are predicated on some interest in either or both of those corporations, and the doctrine of judicial estoppel now precludes [appellant] from taking a contrary position in this action by alleging that she had any such interest." This appeal followed entry of judgment in favor of respondent.

DISCUSSION

I

The doctrine of judicial estoppel has been recognized by numerous state and federal courts, including this court. (See, e.g., *Rissetto v. Plumbers*

*and Steamfitters Local 343* (9th Cir. 1996) 94 F.3d 597, 605-606; *Michelson v. Camp* (1999) 72 Cal.App.4th 955, 970 [85 Cal.Rptr.2d 539]; *Drain v. Betz Laboratories, Inc.* (1999) 69 Cal.App.4th 950, 955-959 [81 Cal.Rptr.2d 864]; *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96].) Although the precise parameters of the doctrine have not been clearly defined, we have agreed with the court in *Jackson* that it quite clearly should be applied in the following situation: when " '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake. [Citations.]' " (*Drain v. Betz Laboratories, Inc., supra*, 69 Cal.App.4th at p. 957, quoting *Jackson v. County of Los Angeles, supra*, 60 Cal.App.4th at p. 183.) ■ Appellant's primary contention on appeal is that the doctrine cannot be applied in the absence of the third factor, which is not present here because both of her bankruptcy petitions were dismissed.

■ As we recognized in *Drain*, " '[j]udicial estoppel is an equitable doctrine aimed at preventing fraud on the courts.' " (*Drain, supra*, 69 Cal.App.4th at p. 956, quoting *In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 850 [21 Cal.Rptr.2d 642].) " '[T]he "essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." [Citation.]' . . . The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary. [Citations.]" (*Drain v. Betz Laboratories, Inc., supra*, at p. 956, quoting *Billmeyer v. Plaza Bank of Commerce* (1995) 42 Cal.App.4th 1086, 1092 [50 Cal.Rptr.2d 119].) Accordingly, in *Drain*, we agreed with *Jackson* that "because judicial estoppel is an equitable doctrine, [the court] could not 'rule out the possibility that, in a future case, circumstances may warrant application of the doctrine even if the earlier position was not adopted by the tribunal.' [Citation.]" (*Drain v. Betz Laboratories, Inc., supra*, at p. 957, quoting *Jackson v. County of Los Angeles, supra*, 60 Cal.App.4th at pp. 183-184, fn. 8.)

Other California courts have acknowledged that there is no hard and fast rule which limits application of the doctrine to those situations where the litigant was successful in asserting the contradictory position. (See *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 957-958 [62 Cal.Rptr.2d 142]; *Rissetto v. Plumbers and Steamfitters Local 343, supra*, 94 F.3d at p. 601 ["This Circuit has not yet had occasion to decide whether to follow the

'majority' view," under which the doctrine is inapplicable "unless the inconsistent statement was actually adopted by the court in the earlier litigation," "or the 'minority' view," under which judicial estoppel "applies even if the Litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing 'fast and loose' with the court." (Fn. omitted.)].) Other courts have concluded that judicial estoppel may be applied without regard to the party's success in the earlier litigation. (See, e.g., *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.* (3d Cir. 1996) 81 F.3d 355, 361 [" '[T]he critical issue is what the [party] contended in the underlying proceeding, rather than what the jury found.' [Citation.] Whether the party sought to be estopped benefitted from its earlier position or was motivated to seek such a benefit may be relevant insofar as it evidences an intent to play fast and loose with the courts. It is not, however, an independent requirement for application of the doctrine of judicial estoppel."]; *Allen v. Zurich Ins. Co.* (4th Cir. 1982) 667 F.2d 1162, 1167 [holding it was "more appropriate" to apply the doctrine of judicial estoppel where the litigant was successful in the earlier litigation].)

 We believe that this is a situation which warrants application of the doctrine of judicial estoppel even absent proof of success in the earlier litigation. Appellant brazenly admits that she transferred her most valuable asset—her income stream—to a corporation owned wholly by her paramour in order to keep it out of the hands of her creditors. She then filed for bankruptcy, clearly expecting to reclaim her funds from her trusted friend after all of her lawful debts were discharged. Not once, but three times, she signed documents under oath for filing with the bankruptcy court which claimed to list all of her assets but said nothing about any interest in Women's Health or Nationwide or the funds she allegedly believed were being held for her there. Assuming that the doctrine of judicial estoppel should be applied to an unsuccessful litigant only in the rare situation where the litigant has made an egregious attempt to manipulate the legal system, we agree with the trial court that "this is as egregious as it gets . . . ."

Moreover, because of the singular nature of bankruptcy law, we believe appellant obtained a legal benefit from the prior statements as soon as they were made. The filing of the bankruptcy petitions resulted in an automatic stay under title 11 of the United States Code section 362(a), precluding appellant's creditors from taking any action against her or her assets unless and until the stay was lifted or the proceedings dismissed without discharge. " 'When a debtor files a bankruptcy petition, an automatic stay immediately arises. The scope of the stay is quite broad. It is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy for [or] against the debtor

or affecting the property of the estate.' " (*In re Chugach Forest Products, Inc.* (9th Cir. 1994) 23 F.3d 241, 243; see *Pennsylvania Public Welfare Dept. v. Davenport* (1990) 495 U.S. 552, 560, fn. 3 [110 S.Ct. 2126, 2131, 109 L.Ed.2d 588] [court stated that 11 U.S.C. § 362(a) automatically "protects a debtor from various collection efforts over a specified period . . . ."]; *NLT Computer Services v. Capital Computer Systems* (6th Cir. 1985) 755 F.2d 1253, 1258 ["The stay provisions of section 362 are automatic and self-operating and those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted."].) The statements appellant made under oath in the bankruptcy proceedings disavowing any interest in the two corporations made it appear that appellant had no appreciable assets. This discouraged creditors from seeking to lift the automatic stay or have the petitions dismissed without discharge.[3] By claiming under oath to have no interest in the corporations, appellant was able to twice forestall creditor action for substantial periods of time. We see no reason why this does not suffice to supply the third factor needed to support application of the doctrine of judicial estoppel.

Appellant contends the position taken in the bankruptcy court was not totally inconsistent with the position taken in the court below. According to appellant's brief, the position taken in bankruptcy was that she "does not own an interest in the corporations" whereas the position taken in the underlying lawsuit was that respondent "breached an accountant's fiduciary duty" owed to her. It is true that the ultimate issue in the underlying litigation revolves around whether respondent breached a duty of care owed to appellant. The specific claim, however, is that respondent breached his duty by failing to provide appellant with financial information concerning Women's Health and Nationwide or keep her informed as to how they and their assets were being managed by Woodruff.[4] As the trial court recognized, appellant's claims herein "are predicated on some interest in either or both of those corporations . . . ." The doctrine of judicial estoppel was properly used by the court to preclude appellant from attempting to establish that she

---

[3]A dismissal of a bankruptcy petition without discharge can be with prejudice under the appropriate circumstances, precluding the debtor from filing a subsequent petition. (See *In re Leavitt* (Bankr. 9th Cir. 1997) 209 B.R. 935, 940.)

[4]Appellant set forth the following alleged instances of specific misconduct on the part of respondent in support of the opposition to the summary judgment: "[Respondent] never advised [appellant] of the gross revenues of Women's Health nor the amount of monies that were being paid to Woodruff as compensation at any time"; "[respondent] never advised [appellant] of the gross revenues of Women's Health, nor the amounts of monies that were being paid to Woodruff as her compensation for calendar years 1995 and 1996"; "[respondent] never spoke to [appellant] in December 1996 when he zeroed out Women's Health, resulting in monies being paid to Woodruff as compensation for calendar year 1996"; and "[respondent] refused to allow [appellant] to view the books and records of Women's Health in late 1996, after he was aware of conflict between [appellant] and Woodruff."

held an interest in the corporations sufficient to require the corporations' accountant to keep her abreast of their financial affairs.

Appellant also contends there was no evidence of the fifth factor needed to support judicial estoppel listed in *Jackson*—that the position in the earlier litigation was not taken as the result of ignorance, fraud, or mistake. The trial court stated at the hearing on the summary judgment motion that intent to deceive could be inferred from appellant's admission that she formed the corporations to hide assets from her creditors and the failure to list the corporations in a bankruptcy petition filed two years later. We agree. Schedule B clearly asks the debtor to list all personal property, including "[s]tock *and interests* in incorporated and unincorporated businesses." (Italics added.) An interest in a group retirement plan is listed in the earlier petition, but nothing about Women's Health or Nationwide appears there or in the amended petition or the 1996 petition. The value of appellant's schedule B personal property is variously described as $27,197, $25,900, and zero. There is no reference to the $500,000 the complaint alleges was raided from Women's Health's coffers by Woodruff. Elsewhere in the petitions, appellant is careful to list all unliquidated claims, such as a claim arising from an automobile accident and a potential malpractice claim against a prior attorney. No reference is made to appellant having an unliquidated claim on funds held by Women's Health or Nationwide.

Appellant stated in her declaration that she did not read the bankruptcy petitions or schedules before signing them, and relied on the advice of professionals concerning which assets to list, but did not specifically discuss with anyone whether her alleged interest in Women's Health should have been included in the bankruptcy petitions or schedules. This is not the type of ignorance which permits a party to avoid the impact of signing a legal document. (See *Hulsey v. Elsinore Parachute Center* (1985) 168 Cal.App.3d 333, 339 [214 Cal.Rptr. 194] ["It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it."].) We see no reason to encourage willful blindness to the content of documents signed under penalty of perjury by allowing a party to use the excuse of failure to read as a basis for rejecting application of the doctrine of judicial estoppel.

## II

Even if the doctrine of judicial estoppel did not apply to this situation, there is another more basic reason why summary judgment was properly

granted. Appellant raised no dispute concerning the fact established by her prior admission—that appellant holds no interest in Women's Health or Nationwide.

As we have seen, the essence of appellant's claim is that respondent failed to provide to her financial information concerning Women's Health or inform her how it was being managed. At the same time, appellant concedes she is not an officer, director, or shareholder of Women's Health or its parent corporation. It is an obvious proposition that "[t]he books, records and papers of private corporations are not open to public inspection—they are private property." (*Solorza v. Park Water Co.* (1948) 86 Cal.App.2d 653, 660 [195 P.2d 523].) Even a shareholder has only a limited right to access to corporate financial records. Shareholder inspection of accounting books and records or corporate minutes is available only during usual business hours and after a written demand has been made. (Corp. Code, § 1601.) "Although shareholders have some rights to corporate information which are not enjoyed by the general public, 'shareholder status does not in and of itself entitle an individual to unfettered access to corporate confidences and secrets.' [Citation.]" (*National Football League Properties, Inc. v. Superior Court* (1998) 65 Cal.App.4th 100, 107 [75 Cal.Rptr.2d 893], fn. omitted.)

Nor can a shareholder assert a claim against a professional employed by a corporation based on violation of a duty of care owed to the shareholder. (*Skarbrevik v. Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 703-707 [282 Cal.Rptr. 627].) *Skarbrevik* involved a negligence claim against an attorney representing a closely held corporation brought by a minority shareholder whose shares had been diluted by a plan formulated by the attorney. Recognizing that " '[a] key element of any action for professional malpractice is the establishment of a duty by the professional to the claimant,' " this court explained in *Skarbrevik* that "[a]n attorney representing a corporation does not become the representative of its stockholders merely because the attorney's actions on behalf of the corporation also benefit the stockholders . . . . [C]orporate counsel's direct duty is to the client corporation, not to the shareholders individually, even though the legal advice rendered to the corporation may affect the shareholders." (*Id.* at pp. 700, 704.) "The fact that [the attorney] could have foreseen the adverse consequences of his advice and its impact on plaintiff is not sufficient justification for fixing liability on him to a nonclient shareholder under these circumstances." (*Id.* at p. 707.)

The bankruptcy petitions and schedules signed by appellant represented, at a minimum, an admission that she had no ownership interest in Women's Health or Nationwide, which the trial court was entitled to accept as true for

purposes of meeting respondent's burden of proof on summary judgment. (See, e.g., *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 871 [64 Cal.Rptr.2d 324] [in an action by a law firm for recovery of fees from client, court properly accepted as evidence in support of summary judgment documents filed in connection with a claim for attorney fees in an earlier litigation showing that the client believed the fees were reasonable].) We have reviewed the evidence presented by appellant in opposition to the summary judgment motion and found nothing to suggest the opposite, that she had any type of recognizable interest in Women's Health or Nationwide which would have obligated respondent to share confidential financial and management information with her.

Appellant admitted in her complaint she was not a shareholder of either corporation, so she held no interest in any traditional sense. Appellant has not articulated any alternate theory which would justify her right to claim an interest in Women's Health, Nationwide, or their assets. Appellant appears to believe that because she gave funds to corporations in which she held no legal interest in order to shield them from her creditors, she has an equitable claim on the corporations' assets. If so, appellant subscribes to a definition of the word "equity" with which this court is not familiar. "That doctrine [of equity] is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith." (*Precision Co. v. Automotive Co.* (1945) 324 U.S. 806, 814 [65 S.Ct. 993, 997, 89 L.Ed. 1381].) "[W]hile 'equity does not demand that its suitors shall have led blameless lives,' [citation], as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. [Citations.]" (*Id.* at pp. 814-815 [65 S.Ct. at p. 997].) The doors of a court of equity are closed "to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." (*Id.* at p. 814 [65 S.Ct. at p. 997].) Courts sitting in equity have no interest in becoming " 'the abettor[s] of iniquity.' [Citation.]" (*Ibid.*)

 Appellant gave her assets to the corporations to prevent them from being paid to her lawful creditors. Had she not done so, the funds would have been available to distribute to her creditors in bankruptcy or at some earlier time. She personally would have gained no benefit from them. We do not see how this translates into an equitable claim on the corporations or their assets. Having articulated no basis on which to stake a claim to the corporations, appellant cannot justify a claim against an accountant whose only fault was failure to reveal corporate confidences to an outsider.

## DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Hastings, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 21, 2001.