Filed 7/8/14  Anaheim Ducks Hockey Club v. DS Waters of America CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANAHEIM DUCKS HOCKEY CLUB,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>DS WATERS OF AMERICA, INC.,<br><br>    Defendant and Respondent. | G048849<br><br>(Super. Ct. No. 30-2012-00563336)<br><br>    O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Reversed in part and affirmed in part.

Jerome M. Jackson for Plaintiff and Appellant.

Law Offices of Geoffrey Long, Geoffrey Long; Seyfarth Shaw, Eugene S. Suh and James M. Harris for Defendant and Respondent.

\*         \*         \*

Plaintiff and cross-defendant Anaheim Ducks Hockey Club, LLC (the Ducks), appeal from the judgment entered after a bench trial on the Ducks' complaint and cross-complaint of defendant and cross-complainant DS Waters of America, Inc. (DS). The trial court had entered judgment in favor of DS on the Ducks' complaint for breach of contract and in favor of the Ducks on DS's cross-complaint for breach of the same contract. The Ducks contend this was error because the court's finding that the Ducks's breaches of the sponsorship agreement between it and DS were not material meant DS's failure to perform under the contract was not excused. We agree and reverse that part of the judgment on the Ducks's complaint in favor of DS and order the trial court to enter judgment in favor of the Ducks. In all other respects, the judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

In 2008, the parties entered into a Sponsorship Agreement (agreement), effective from August 1, 2008 to June 30, 2011. In exchange for a sponsorship fee, the agreement gave DS "the right to place and staff one (1) table on the Plaza Level of the Facility at each public event," and granted DS "the right to be the provider of five-gallon water service to the Ducks, the Facility and the Practice Facility and coffee service to the employees of the Ducks, the Facility and the Practice Facility."

The agreement also provided that whenever a party is in default for failing "to perform any material obligation in a timely manner," "the non-defaulting party shall deliver written notice specifying the default to the defaulting party," giving the defaulting party 30 days to cure the default. If the defaulting party fails to comply, the non-defaulting party may terminate the agreement and "accelerate the payment of and bring [a]n action to collect all installments of the [s]ponsorship [f]ee . . . payable through the [t]ermination [d]ate," i.e., June 30, 2011, regardless of the date of default.

2

DS paid the sponsorship fee for the first year. In 2009, the parties attempted to renegotiate the agreement but the agreement was never modified or amended. DS did not pay the sponsorship fees for the second or third years.

In both October and December 2010, the Ducks sent DS a notice of default for nonpayment of the second year sponsorship fee and a notice of termination. The Ducks thereafter sued DS for breach of written contract, alleging that as a result of DS's nonpayment of the sponsorship fees for the second and third years, it was damaged in the amount of the unpaid fees.

DS answered and filed a cross-complaint alleging, among other things, the Ducks's material breaches of the agreement excused DS from its contractual obligations. DS alleged the Ducks breached these provisions by failing to: (1) permit DS to place and staff a promotional table on the Plaza level at all public events (tabling provision); (2) give DS "the exclusive right to sell all coffee and coffee-related products at Honda Center concession stands" (coffee exclusivity provision); and (3) allow DS "the right to be the provider of 5-gallon water service and coffee service to the . . . Ducks."

After a four-day bench trial, the court orally issued its findings and decision. On appeal, both parties focus on the tabling provision and "the right to be the exclusive provider of coffee service (coffee and coffee-related products) to the Honda Center concession stands." We shall as well.

The court found a breach of the tabling provision because the Ducks did not allow DS to place a table on the Plaza level at every event, sometimes relegating DS to the Terrace level instead. It noted that "[b]y one estimate, it was something like 16 out of 50 times."

As to the coffee exclusivity provision, the court ruled that granting DS the right "to be *the* provider of . . . coffee service" (italics added) instead of "a" provider indicates "exclusivity." Additionally, the provision was ambiguous because it could be

3

construed as giving DS the exclusive right to provide coffee service to "just employees of the Ducks and then, in general, to the facility and the practice facility or to the employees of each of those entities[.]" It thus construed the provision against the Ducks, whom it deemed to be the drafters of the agreement.

The court then considered whether these breaches were material. It examined "the conduct and behavior of the parties," observing DS never complained about either breach by the Ducks, nor was it ever "concerned about whatever technical breaches there might have been." The court cited the provision in the agreement that "if you think there's a default . . . , you got to give written notice," which "[t]hey never did" because, in the court's opinion, "they never thought that the Ducks were in material default." Rather, the court believed DS had "tried to renegotiate [the] contract because the numbers weren't working out right for [it]." It was "paying a whole lot of money on this contract and [was] not getting back what [it] expected." The fact that Aramark, the third-party concessionaire operating the concession stands at the Honda Center, purchased 75 percent of its coffee and coffee-related products from DS further "support[ed] the inference . . . this breach was not a material breach."

The court concluded "the Ducks failed to perform everything . . . that was their responsibility to perform as a condition precedent to their right to payment under the contract" and that "with regards to the cross-complaint, that the breaches . . . claimed by . . . [DS] were not material breaches, and therefore, they are not entitled to damages. It ordered the Ducks to prepare a judgment stating neither party had proven their case.

The record does not reflect either party requested a written statement of decision. Nor does it show the parties stipulated that the reporter's transcript would serve as the statement of decision. Nevertheless, the judgment prepared by the Ducks reads, "After hearing the evidence, and entertaining oral argument, the Court orally rendered its Statement of Decision" and later DS filed and served a notice of entry of judgment

4

stating, "after hearing the evidence and entertaining oral argument, [the court] rendered a Statement of Decision on [the date of the oral hearing]."

DISCUSSION

*1. Applicability of Implied Findings Doctrine and Standard of Review*

We first address DS's contention that because no statement of decision was requested or prepared, the doctrine of implied findings applies. Although this is a correct principle of law (see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134), the fact no *written* statement of decision was prepared does not mean one does not exist.

DS's challenge to the Ducks's statement the court "'issued a Statement of Decision from the bench'" ignores the wording of both the judgment and notice of entry of judgment indicating respectively that the court had "orally rendered its Statement of Decision" and "rendered a Statement of Decision on [the date of the oral hearing]." Because DS was the one who filed and served the notice of entry of judgment embracing the existence of an oral statement of decision rendered on the date of the oral hearing, it is bound by its admission. (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271 ["admission in the pleadings forbids the consideration of contrary evidence"]; *Thomas v. Gordan* (2000) 85 Cal.App.4th 113, 118 [judicial estoppel prevents party from taking contrary positions in the trial and appellate courts].)

Further, as noted by two other cases cited by DS, even if the court's oral decision did not constitute an official statement of decision, it "may be used on appeal to discover the grounds for the judgment" (*Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 526, fn. 7; see *Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 139, 141 ["verbatim transcript of the court's comments" used "to understand the trial court's reasoning in resolving the disputed issues"]) and "for the purpose of discovering the

5

process by which [the judge] arrived at his conclusion[]" (*Henderson v. Fisher* (1965) 236 Cal.App.2d 468, 472).

In any event, we agree with DS that the court's findings of fact, and any implied findings, should be reviewed for substantial evidence. (*Apex LLC v. Sharing World, Inc*. (2012) 206 Cal.App.4th 999, 1009.) We review legal issues under a de novo or independent standard. (*Ibid*.)

*2. Judgment on the Complaint*

"'[I]n contract law a material breach excuses further performance by the innocent party. [Citations.]' [Citations.] 'Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact.'" (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1602-1603.) Contrary to DS's representation throughout its brief, the court did *not* find the Ducks's breaches were material. It specifically stated several times that they were not. Because the breaches were not material, DS was not excused from paying the sponsorship fees for the second and third years.

The trial court found, however, that the Ducks were not entitled to recover damages because it failed to perform everything it was required to do under the contract. This was error. Although generally "[t]he plaintiff must be free from substantial default in order to avail [itself] . . . of the remedies for the defendant's breach" (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 848, p. 953; see *Murray's Iron Works, Inc. v. Boyce* (2008) 158 Cal.App.4th 1279, 1291-1292 [substantial performance under contract sufficient to allow the plaintiff to recover for breach by the defendant]), the defendant, may, by accepting further performance from the breaching party, indicate it has waived the breach (1 Witkin, *supra*, Contracts, §§ 856, 857, pp. 943-944).

6

Here, the court not only determined that the Ducks were free from substantial default but also that DS had essentially waived any breach because it never complained about them nor provided written notice under the terms of the contract. The record supports those findings. Beverly Alterman, DS's sales manager during the relevant time frame, conceded that neither she nor anyone else at DS had provided the Ducks with any written notice of default for failing to provide DS with a promotional table on the Plaza level or violating DS's purported exclusive right to sell all coffee and coffee-related products at the Honda Center. She also admitted DS never made any written complaint of any kind whether by e-mail, letter, fax, or memorandum.

Alterman testified she had complained about the tabling and coffee sales issues in a meeting held in October 2009. But a former Ducks employee who attended the meeting also testified no such complaints were made and that Alterman's focus was on how to get more people to sign up for DS products because providing a person to staff the table at the Honda center was expensive. As to coffee sales, the former Ducks employee testified Alterman did not protest about exclusivity but that Aramark was not purchasing enough coffee from DS. The same is true of a subsequent meeting, with Alterman claiming she raised the issues, and former Ducks employees attending the meeting testifying that Alterman only complained that tabling rights were too expensive and not working out for DS. DS wanted to back out of the contract but the Ducks would not allow that. The Ducks were willing, however, to consider additional sponsorship elements to help DS improve sales.

In concluding the Ducks's breaches were not material, the court found the Ducks's witnesses more credible. On a substantial evidence review, we may not reweigh this credibility determination or reweigh the evidence but must view the evidence and draw inferences in the light most favorable to the judgment. (*Do v. Regents of the University of California* (2013) 216 Cal.App.4th 1474, 1492.) Under this standard,

7

substantial evidence supports the court's findings. Consequently, the judgment is reversed with directions to the trial court to enter judgment in favor of the Ducks.

## DISPOSITION

The judgment is reversed with directions to enter judgment in favor of appellant Anaheim Ducks Hockey Club. Appellant shall recover its costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.