[No. A109477. First Dist., Div. Two. June 30, 2006.]

DANIEL PETER LEVIN, Plaintiff and Appellant, v.
JANIE LEE LIGON et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Anne E. Thorkelson and Anne E. Thorkelson for Plaintiff and Appellant.

Murphy, Pearson, Bradley & Feeney, Timothy J. Halloran, Peter J. Linn, Christian J. Martinez and Christine Huntoon for Defendant and Respondent Janie Lee Ligon.

Law Offices of Littler Mendelson and Michael Hoffman for Defendant and Respondent Levi Strauss & Co.

---

**OPINION**

**LAMBDEN, J.**—Daniel Peter Levin sued his former wife, Janie Lee Ligon, and Levi Strauss & Co. for civil partition of financial assets held in Ligon's name, which included five Levi Strauss & Co. benefit plans (Levi Strauss plans).[1] Levin appealed from the judgment after the trial court granted summary judgment in favor of Ligon and also granted the motion for judgment on the pleadings by Levi Strauss & Co. and the Levi Strauss plans (collectively, Levi Strauss).

In his partition action against Ligon, Levin asserted that their marital dissolution in England did not resolve his community property interest in certain pension and savings plans and accounts held in Ligon's name. The trial court found that Levin's prior legal malpractice action in England, which

---

[1] The five plans are the following: Levi Strauss & Co. Revised Home Office Pension Plan, Levi Strauss Associates, Inc. Executive Deferred Compensation and Benefit Restoration Plan, Employee Investment Plan of Levi Strauss Associates, Inc., Levi Strauss & Co. Long Term Performance Plan, and Levi Strauss & Co. Long Term Incentive Plan.

he settled after asserting that he had lost his right to any interest in the financial assets held by Ligon and accumulated during their marriage, estopped him from claiming a community property interest in these same assets. In making this determination, the trial court applied the test for judicial estoppel set forth in *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171 [70 Cal.Rptr.2d 96] (*Jackson*) and considered evidence that included various documents from Levin's legal malpractice lawsuit in England. On appeal, Levin challenges the court's consideration of these documents and its application of the *Jackson* test. We reject Levin's contentions and uphold the lower court's ruling.

Levin also appeals from that portion of the judgment that granted Levi Strauss's motion for judgment on the pleadings. However, since Levin's opening brief in this court is devoid of any argument or issue relevant to Levi Strauss, we conclude he has waived raising on appeal any argument against Levi Strauss.

## BACKGROUND

Levin and Ligon married in California in 1971. While in California, they divorced in 1978 and remarried on December 31, 1981. The couple moved to England in 1994. Ligon held a senior position with Levi Strauss & Co. in London. Levin and Ligon separated in April 1995 while still residing in England; an English court dissolved their marriage on December 20, 1995.

In February 1996, Levin hired an English law firm, Aaronson & Co. (Aaronson), to represent his interests in recovering his share of the couple's real and personal property. On March 11, 1996, Levin married an English woman named Allison Beatt.

Both Levin and Ligon filed an application in England for adjudication of certain property rights. In addition to an interest in certain real property owned by the couple, Levin sought a share of Ligon's financial assets, including the Levi Strauss plans. These personal assets are referred to as ancillary relief in English law. Levin, however, learned that under the Matrimonial Causes Act 1973, section 28(3) his marriage to Beatt barred his claim for ancillary relief against Ligon.

Section 28(3) of the Matrimonial Causes Act 1973 provides that, "[i]f after the grant of a decree dissolving . . . a marriage either party to that marriage remarries, that party shall not be entitled to apply, by reference to the grant of that decree, for a financial provision order in his or her favour, or for a property adjustment order, against the other party to that marriage."

Levin filed an amended summons in which he withdrew his claim, which, "as finally amended, entitled him to make a claim only against [Ligon's] real property assets, namely . . . two homes . . . ." Pursuant to section 17 of the Married Women's Property Act 1882 (as amended) Levin made a claim to the real property he held jointly with Ligon. In 1997, pursuant to a marital dissolution and property settlement agreement between Levin and Ligon, the English High Court of Justice adjudicated the issue of Levin's claims against some of Ligon's property, as well as a claim Ligon had asserted against Levin's assets. The English High Court ordered Ligon to pay $320,000 to Levin, or one-half the equity in the real property Levin and Ligon jointly owned in California.

Subsequently, Levin initiated a legal malpractice action against Aaronson, alleging that his solicitor failed to advise him that his marriage to Beatt would bar him from applying for ancillary relief. In support of his claim against Aaronson, Levin submitted a declaration, which stated the following: "I have never professed to be knowledgeable about English family law. However, I had consistently been advised that, bearing in mind the contributions I had made to the marriage, the sacrifices I had made to support Ms. Ligon's career and the sums I had expended to allow her to accumulate her significant capital assets, I would be entitled to both a capital lump sum and periodical payments, alternatively a lump sum in lieu. It is solely through the negligence of the Defendant firm that I lost that entitlement. Accordingly, I ask this Honorable Court to Order that I be compensated by the Defendant for the loss[,] which it had caused me."

In 1998, Levin settled his malpractice action against Aaronson for approximately $331,813. According to the Queen's Bench Division of the High Court of Justice in England, this sum represented: " 'The difference between the amount [Levin] would have received had he been able to make an ancillary relief application under the Matrimonial Causes Act 1973 (as amended), and the sum of US $320,000 being the amount received in his subsequent application under section 17 of the Married Women's Property Act 1882 (as amended)[,]' " but for the negligence of Aaronson.

Both Ligon and Levin separately moved back to California and, on October 5, 1999, Levin filed a complaint against Ligon and Levi Strauss & Co. for partition of personal property held in Ligon's name and for declaratory relief. Levin claimed a community property or one-half interest in assets that included pension and retirement benefits, a deferred compensation plan, stock options, life insurance, investments in various non-employment-related stocks, and various cash accumulations.

Ligon demurred to Levin's complaint, and the trial court sustained the demurrer without leave to amend on January 25, 2000. Levin appealed; we

reversed on the basis that the trial court's judicial notice of documents from the English lawsuit was improper in a proceeding involving a demurrer and that neither res judicata nor collateral estoppel applied. (*Levin v. Ligon* (Oct. 19, 2001, A091316) [nonpub. opn.].)

In the trial court, in October 2003, Levin requested to join the Levi Strauss plans as defendants. The trial court permitted the joinder on December 8, 2003.

On April 5, 2004, Ligon moved for summary judgment on Levin's complaint. In support of the motion, Ligon submitted the following documents presented in Levin's legal malpractice action in the High Court of Justice, Queen's Bench Division, in England: The writ of summons issued December 9, 1997, accompanied by a statement of claim; an affidavit of Levin dated July 30, 1996; a skeleton argument for damages (counsel's argument for damages); Levin's statement dated December 1, 1999; the consent order dated April 14, 1999; and the "Voluntary Further and Better Particulars of the Statement of Claim" (counsel's argument, supplementing the skeleton argument). Levin objected to the trial court's considering any of these documents on the grounds that they were inadmissible records of a foreign court, inadmissible hearsay, and irrelevant. Levin also objected to some of the documents on the basis that they represented incompetent attorney argument.

On October 20, 2004, the trial court entered summary judgment in favor of Ligon and against Levin, ruling that Levin was barred from recovering any of the property at issue in his civil partition action. The court overruled the hearsay objections to the exhibits as the court did not consider them for the truth of the matter asserted, but to demonstrate that Levin took a contrary position in another tribunal. The court found that the position Levin took in the English solicitor malpractice action was: "that his remarriage to Alison Beatt, during the pendency of the property distribution phase of his divorce from Ligon . . . , precluded him from filing an application for ancillary relief against Ligon; and . . . that he permanently lost entitlement to any of Ligon's personal property assets as a result of his English solicitor's failure to advise him, prior to [Levin's] remarriage, that such remarriage would preclude him from claiming entitlement to Ligon's personal property assets . . . . [Levin's] position in this civil partition action in the Superior Court . . . is that he is now entitled to seek partition of those very assets to which he was previously, permanently barred."

The trial court further explained that there is no issue of material fact in dispute that Levin took "(1) two positions; (2) in two separate judicial proceedings; (3) that are totally inconsistent; and (4) were not the product of

ignorance, fraud or mistake." The court concluded that Levin "was successful in the prior proceeding against his English solicitors because, at least in part, his recovery in that action necessarily included damages stemming from his lost claim to Ligon's personal property assets." However, the court noted that this latter fact was immaterial, and the dispositive factor was that Levin had "asserted a position, under oath in a judicial proceeding[,] which is inconsistent with a position he now asserts in a separate proceeding . . . ."

On September 29, 2004, the trial court issued an order denying the joinder of Levi Strauss in Ligon's summary judgment motion on the grounds that the notice of joinder in the motion was untimely. Levin refused to dismiss Levi Strauss and Levi Strauss moved for judgment on the pleadings on November 5, 2004. The trial court granted Levi Strauss's motion at the hearing on December 3, 2004.

On January 31, 2005, the trial court entered judgment granting Ligon's motion for summary judgment and granting Levi Strauss's motion for judgment on the pleadings.

Levin filed a timely notice of appeal.

## DISCUSSION

### I. *The Granting of Summary Judgment*

#### A. *Standard of Review*

In the present case Levin appeals from the trial court's grant of summary judgment against his claim for partition of certain pension and savings plans accounts held in Ligon's name. The court properly grants summary judgment if the record establishes no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493], citations & fns. omitted.) Although the burden of production shifts, the moving party always bears the burden of persuasion. (*Id.* at p. 850.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in

favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*) We review the record de novo. (*Id.* at p. 860.)

## B. *Documents from the Legal Malpractice Case in England*

Levin argues that the trial court improperly considered the documents that Levin had submitted in his legal malpractice action in England. Levin maintains that these documents were not authenticated, were irrelevant, and were inadmissible hearsay.

### 1. *Authenticity*

With regard to the issue of authenticity, Levin maintains that the trial court found that these documents had been submitted in the English proceeding, but he contends nothing on the documents indicates that they were filed in that court. He states that the English court did not certify them. (See *Ross v. Creel Printing & Publishing Co., Inc.* (2002) 100 Cal.App.4th 736, 743 [122 Cal.Rptr.2d 787].) Moreover, he argues that no document was sworn or verified as defined by Code of Civil Procedure section 2015.5. (See *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1025–1026 [4 Cal.Rptr.3d 385].)

When responding to the request for production of documents and producing these documents,[2] Levin did not make an authenticity objection. In his opposition to Ligon's summary judgment motion, Levin objected to the court's consideration of these documents on the basis that they were records of a foreign court, were inadmissible hearsay, and were irrelevant. He did not assert that such documents were never filed in an English court. Thus, he never challenged the documents' authenticity in the lower court.

Further, when arguing that the documents were inadmissible at the hearing on the summary judgment motion, Levin conceded that the documents' authenticity was not being challenged. Levin argued at the hearing as follows: "First of all, they don't support their motion with admissible evidence. The fact that it was produced in discovery doesn't make it admissible. And under [Code of Civil Procedure section] 437(c), you may only support a motion for summary judgment with admissible evidence. They did not seek judicial notice of these documents and probably couldn't have succeeded in doing so. *The authenticity isn't the question*, the truth of the matter stated therein is that what he sought, is that how much it was." (Italics added.)

Subsequently, at this same hearing, the trial court explained that Levin had produced these documents during discovery and had verified them on May

---

[2] The record contains the response to the request for documents but it does not include the actual request itself. We therefore do not know the wording of the specific request.

31, 2003. Counsel for Levin, without any further elaboration, stated that she objected to that evidentiary ruling. "[S]pecific objections" are waived on appeal when trial counsel "merely interpose[s] a general objection[.]" (*People v. Rodriquez* (1969) 274 Cal.App.2d 770, 775–776 [79 Cal.Rptr. 240].) Levin never clearly objected on the basis of the documents' authenticity and has therefore waived raising this claim on appeal. (Evid. Code, § 353 ["finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"].)

Even if this issue were preserved for appeal, Levin could not prevail on the merits. Levin treated these documents as authentic by failing to make any objection to them on this basis in his opposition to Ligon's motion for summary judgment or in his separate statement of facts in support of his opposition. Thus, Levin, himself, authenticated the documents under Evidence Code section 1414.[3] Levin never really addresses the applicability of section 1414, but merely argues the fact that the documents are authenticated does not make them admissible. That statement is obviously true, but the documents were authenticated under Evidence Code section 1414.[4]

### 2. *Relevance*

Levin contends that the documents from his legal malpractice action in the English court are irrelevant. He claims that the documents merely established that he had an inconsistent legal position, not an inconsistent factual position, and thus are inapplicable to the doctrine of judicial estoppel. He also claims that the documents "do not actually contain or prove the main 'facts' ascribed to them by [Ligon] and the trial court." Whether the documents were sufficient to grant the summary judgment motion is a separate issue and

---

[3] Evidence Code section 1414 provides: "A writing may be authenticated by evidence that: [¶] (a) The party against whom it is offered has at any time admitted its authenticity; or [¶] (b) The writing has been acted upon as authentic by the party against whom it is offered."

[4] Levin's citations to *Reeves v. Safeway Stores, Inc.* (2005) 121 Cal.App.4th 95, 104–105 at footnote 8 [16 Cal.Rptr.3d 717] (evidence incompetent when counsel purported to identify and thereby authenticate records as business records without establishing any foundation); *Ross v. Creel Printing & Publishing Co., Inc., supra,* 100 Cal.App.4th at page 743 (court refused to take judicial notice of complaint filed in Nevada court when authenticity not established because document was neither certified nor provided under subpoena from Nevada court); and *Stockinger v. Feather River Community College, supra,* 111 Cal.App.4th at pages 1025–1026 (declarations failed to comply with Code Civ. Proc., § 2015.5) are unavailing. None of these cases concerns authentication under Evidence Code section 1414.

addressed, *post*, in part I.C. of this decision. The question here is simply whether the documents were relevant under Evidence Code section 210.[5]

The documents Levin submitted in the English court were clearly critical to any determination that Levin had taken a position in the English court that was completely contrary to the position he was taking in the present action. Accordingly, these documents were relevant under Evidence Code section 210.

### 3. Hearsay

Levin maintains that the documents from the legal malpractice action in the English court are inadmissible hearsay. The trial court found that the documents were admissible not for the truth of the matters stated therein, but to show the position Levin took. Levin's argument is that the trial court made this ruling "[w]ithout warning" and without briefing on the "court's theory of admissibility." Further, Levin argues there is no distinction between the position Levin took and the truth of the position Levin took.

The trial court's order granting Ligon's summary judgment motion established that it was considering the documents only as evidence of Levin's position in the English proceeding. The court made absolutely no determination that Levin's position was in fact correct or that English law did actually bar him from a claim of the financial assets held by Ligon.[6] Thus, the objection based on hearsay was properly denied.[7]

Levin's somewhat incomprehensible argument that the court made this ruling without warning has no basis. Levin objected to the admission of these documents on the grounds they were inadmissible hearsay. Thus, the court properly considered and ruled on this objection.

---

[5] Evidence Code section 210 provides: " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

[6] Levin asserts that the fact at issue is what position Levin took and the documents are therefore being considered to establish that fact. " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) In the present case, contrary to Levin's assertion, "the matter stated" is not what position Levin took in the English court. Rather, "the matter stated" was his assertion that English law barred him from pursuing a claim against Ligon for the personal property acquired during marriage and held in her name.

[7] Ligon claims that the documents produced in discovery in this action were admissible as judicial admissions. We need not address this argument because we conclude that the trial court did not consider these documents for the truth of the matter asserted.

## C. *Burden of Persuasion*

■ Levin contends the trial court erred in finding Ligon met her burden of persuasion in establishing judicial estoppel bars his claim for partition of her financial assets. Whether to apply judicial estoppel is a question of law for the trial court, and it can be decided by summary judgment where none of the facts material to the court's decision to apply judicial estoppel are disputed. (*Drain v. Betz Laboratories, Inc.* (1999) 69 Cal.App.4th 950, 959, fn. 8 [81 Cal.Rptr.2d 864] (*Drain*).)

In the present case, Levin argues: the trial court improperly relied on his declaration submitted in the legal malpractice action in the English court; the court improperly applied the test for applying judicial estoppel set forth in *Jackson, supra,* 60 Cal.App.4th 171, as the test does not reflect California and federal jurisprudence; and, even if the *Jackson* test remains good law, the court improperly applied the *Jackson* test to the facts of the present case.

### 1. *Levin's Declaration*

Levin objects to the court's consideration of the following declaration that he submitted to the English court in support of his legal malpractice action: ". . . I had consistently been advised that . . . I would be entitled to both a capital lump sum and periodical payments, alternatively a lump sum in lieu. It is solely through the negligence of the Defendant firm that I lost that entitlement. Accordingly, I ask this Honorable Court to Order that I be compensated by the Defendant for the loss, which it had caused me."

Levin's principal complaint appears to be that the trial court used this declaration to "fill in holes" in Ligon's evidence. He argues that the court's order cites this declaration as supporting the summary judgment motion and then Levin states that "[t]he court thus conceded that [Ligon] *failed* to present competent evidence establishing every element of her judicial estoppel defense as a matter of law." He then declares that "[t]his alone is reversible error."

Levin's argument merits little discussion. The court did not rely exclusively on this declaration. Rather, the court stated at the beginning of the hearing on the summary judgment motion the following: "I note incidentally that to the extent there is anything missing here, Mr. Levin's declaration filed in opposition to this motion for summary judgment fills every hole. I mean he lays out everything and that's in connection with this case. . . ."

In any event, as discussed *ante,* the trial court properly considered the declaration to determine whether Levin had taken a position in the English

court that was completely inconsistent with the claims he was making in the present case. The trial court's consideration of this declaration does not constitute reversible error. The question of whether this declaration and other evidence were sufficient to support Ligon's defense of judicial estoppel is considered *post*, in section I.C.3.

### 2. *Judicial Estoppel*

█ Judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, " 'prevents a party from "asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." ' " (*Daar & Newman v. VRL International* (2005) 129 Cal.App.4th 482, 490–491 [28 Cal.Rptr.3d 566] (*Daar & Newman*).) The dual purposes for applying this doctrine are " ' "to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies." ' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986 [12 Cal.Rptr.3d 287, 88 P.3d 24].) Judicial estoppel "is intended to prevent litigants from ' " ' "playing 'fast and loose with the courts." ' " [Citation.]' [Citation.] It is an ' "extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." ' " (*Daar & Newman, supra,* at pp. 490–491.)

Judicial estoppel is an equitable doctrine and its application by the court is discretionary. (*Aguilar v. Lerner, supra,* 32 Cal.4th at p. 986.) Courts may decide to apply this doctrine against a plaintiff's claims to prevent "judicial fraud from a litigant's deceitful assertion of a position completely inconsistent with one previously asserted, thus compromising the integrity of the administration of justice by creating a risk of conflicting judicial determinations." (*ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 832 [30 Cal.Rptr.3d 588].) Some Courts of Appeal have held that the inconsistent position "generally must be factual in nature." (*Ibid.*) If the challenge is merely a legal challenge that reflects two different positions in two lawsuits, this may be a "reasonable" litigation tactic, which does not undermine the integrity of the judicial process. (*California Amplifier, Inc. v. RLI Ins. Co.* (2001) 94 Cal.App.4th 102, 118 [113 Cal.Rptr.2d 915] (*California Amplifier*).)

Our Supreme Court, however, did not reject the application of this doctrine simply because the inconsistent positions are legal rather than factual (see *Aguilar v. Lerner, supra,* 32 Cal.4th at p. 987) although that issue was not directly considered by the Supreme Court (*ibid.*). Among federal courts, where the doctrine has been used more extensively, some federal courts have limited this doctrine to a party's factual position. (See, e.g., *Bates v. Cook, Inc.* (M.D.Fla. 1984) 615 F.Supp. 662, 672–673; *United States v. Siegel* (N.D.Ill.

1979) 472 F.Supp. 440, 442, fn. 4; *United States v. Certain Land and Interests in Property* (M.D.Tenn. 1964) 225 F.Supp. 338, 341.) However, "[t]he greater weight of federal authority . . . supports the position that judicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion." (*Helfand v. Gerson* (9th Cir. 1997) 105 F.3d 530, 535 ["The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal"]; see also *Matter of Cassidy* (7th Cir. 1990) 892 F.2d 637, 641–642; *Hardwick v. Cuomo* (3rd Cir. 1989) 891 F.2d 1097, 1105, fn. 14; *Patriot Cinemas, Inc. v. General Cinema Corp.* (1st Cir. 1987) 834 F.2d 208, 212–214; *Allen v. Zurich Ins. Co.* (4th Cir. 1982) 667 F.2d 1162, 1166–1167.)

In the present case, the trial court determined that judicial estoppel barred Levin's claim after applying the five-pronged test set forth in *Jackson, supra,* 60 Cal.App.4th 171. Levin argues that *Jackson* was wrongly decided and that it has been undermined by subsequent federal and state court decisions. Thus, prior to determining whether the lower court properly applied the test in *Jackson,* we first examine the *Jackson* decision and whether subsequent state and federal decisions have brought the holding and analysis of *Jackson* into question.

### a. *The* Jackson *Decision*

The court in *Jackson* considered whether a county safety police officer was precluded from claiming his employer had violated the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12111 et seq.) after he had filed a workers' compensation claim and resolved it by stipulation that resulted in his receiving $48,359. (*Jackson, supra,* 60 Cal.App.4th at p. 189.) The parties' stipulation also stated that the parties agreed that the plaintiff was under a restriction that his " 'work environment [be] free from emotional stress and strain and no heavy work.' " (*Ibid.*)

The *Jackson* court reviewed both federal and state law and concluded that judicial estoppel applies when: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson, supra,* 60 Cal.App.4th at p. 183.) The court in *Jackson* noted that the two positions in the case before it were assertions of fact and it therefore did not have to determine whether the doctrine also applied to assertions of law. (*Id.* at p. 188, fn. 11.)

The *Jackson* court proceeded to apply the five-pronged test to the facts of the case before it. It noted that, although the ADA is a federal statute, the court was applying state law principles of judicial estoppel in determining whether the plaintiff's claim was barred. (*Jackson, supra,* 60 Cal.App.4th at p. 184.) A review of federal and state authorities revealed that "the term 'disability,' as used in determining income eligibility under benefit programs such as workers' compensation, is not necessarily used in the same way for purposes of the ADA. However, while 'disability' may have different meanings in the two contexts, the findings made in the administrative proceeding may, in some situations, judicially estop an employee from pursuing an ADA claim." (*Id.* at p. 187.) In *Jackson*, the plaintiff, himself, admitted at his deposition that all of the duties of a safety police officer involved stress and that he would not consider any position other than that of safety police officer. (*Id.* at p. 190.) Since the plaintiff resolved his workers' compensation claim and received a sum by stipulating that he was under a restriction that his work environment be free from emotional stress and strain, he could not now claim that his employer could make a reasonable accommodation. (*Id.* at pp. 189–190.) Thus, the court held that the position the plaintiff took at his workers' compensation hearing precluded him from now claiming that he was a " 'qualified individual with a disability.' " (*Ibid.*)

### b. *State and Federal Cases Subsequent to the Jackson Decision*

In attacking the *Jackson* decision, Levin devotes much of his argument to citing and discussing the case law on judicial estoppel prior to the *Jackson* decision. (See, e.g., *Coleman v. Southern Pacific Co.* (1956) 141 Cal.App.2d 121, 126–128 [296 P.2d 386] (*Coleman*).)[8] However, as the *Jackson* court

---

[8] Levin draws parallels between the facts in the present case and those in *Coleman, supra,* 141 Cal.App.2d 121. This pre-*Jackson* decision observed that, although California courts had addressed the doctrine of judicial estoppel, "[t]his form of estoppel 'has been said to be one of vague application, and in many cases it has been held inoperative, or has not been applied.' " (*Coleman,* at p. 128.) The *Coleman* court specified that the doctrine could be applied only when the first position was "clearly inconsistent so that one necessarily excludes the other. The application has also *sometimes* been limited by the requirement that to permit one party to change must be unjust to the other party." (*Ibid.,* italics added.) The *Coleman* court rejected the doctrine's application in the case before it because the inconsistency between the positions taken by the plaintiff was not sufficiently clear. (*Id.* at p. 129.)

Thus, even though Levin relies on *Coleman,* its determination is not inconsistent with *Jackson.* As discussed *ante,* the *Jackson* test requires the two positions to be "totally inconsistent" (*Jackson, supra,* 60 Cal.App.4th at p. 183); thus, the evidence in *Coleman,* which did not establish a clear inconsistency, would not have satisfied the fourth prong of the *Jackson* test.

Levin also appears to be arguing that the *Jackson* test is incomplete because it does not include a requirement that permitting the party to change his or her position must be unjust or result in prejudice to the other party. Even the *Coleman* court noted that this requirement had

pointed out, California authority had recognized this doctrine, but the California authority had not "established a clear set of principles for applying it." (*Jackson, supra,* 60 Cal.App.4th at p. 181.) The *Jackson* court's expressed intent was to remedy this problem by setting forth an unambiguous five-pronged test. We are therefore principally concerned with the cases following the *Jackson* decision, not those preceding it.

Levin does cite cases decided after *Jackson,* (see, e.g., *Thomas v. Gordon* (2000) 85 Cal.App.4th 113 [102 Cal.Rptr.2d 28]), but these cases either cite *Jackson* with approval or apply the *Jackson* test. Levin points to no decision since *Jackson* that has rejected or questioned this test for judicial estoppel. Indeed, there is no doubt that courts have consistently applied and cited with approval the test set forth in *Jackson, supra,* 60 Cal.App.4th 171. (See, e.g., *State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 826–827 [39 Cal.Rptr.3d 189]; *Daar & Newman, supra,* 129 Cal.App.4th at p. 491; *Furia v. Helm* (2003) 111 Cal.App.4th 945, 958 [4 Cal.Rptr.3d 357]; *M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 468 [3 Cal.Rptr.3d 563]; *Kitty-Anne Music Co. v. Swan* (2003) 112 Cal.App.4th 30, 35 [4 Cal.Rptr.3d 796]; *Thomas v. Gordon, supra,* at p. 118; *Drain, supra,* 69 Cal.App.4th at p. 956; *International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 351 [75 Cal.Rptr.2d 178].) Further, our Supreme Court cited this five-pronged test with approval in *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422 [30 Cal.Rptr.3d 755, 115 P.3d 41] and in *Aguilar v. Lerner, supra,* 32 Cal.4th at pages 986–987.

With regard to Levin's contention that federal decisions subsequent to *Jackson* have brought the *Jackson* test into question, Levin cites one case, *Cleveland v. Policy Management Systems Corp.* (1999) 526 U.S. 795 [143 L.Ed.2d 966, 119 S.Ct. 1597] (*Cleveland II*). *Cleveland II* vacated the judgment of a Fifth Circuit decision, which the *Jackson* court cited *once*. The *Jackson* court did not rely on the Fifth Circuit decision and merely quoted it when setting forth the principles underlying the application of judicial estoppel, which is to prevent " 'a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some

only been imposed by courts some of the time. (*Coleman, supra,* 141 Cal.App.2d at p. 128.) To whatever extent prejudice may have been required prior to *Jackson,* California courts do not currently require it. As already noted, the dual purposes for applying the doctrine of judicial estoppel are " ' "to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies." ' " (*Aguilar v. Lerner, supra,* 32 Cal.4th at p. 986.) Thus, prejudice is irrelevant to a consideration of preserving the integrity of the judicial process, and " '[t]he doctrine does not require reliance or prejudice before a party may invoke it.' " (*Billmeyer v. Plaza Bank of Commerce* (1995) 42 Cal.App.4th 1086, 1092 [50 Cal.Rptr.2d 119].) However, judicial estoppel *is an equitable doctrine,* and its application, even where all necessary elements are present, is discretionary (see, e.g., *Aguilar v. Lerner, supra,* 32 Cal.4th at p. 986), and therefore a court *may* consider the issue of prejudice.

earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the judicial process.' " (*Jackson, supra,* 60 Cal.App.4th at p. 181, quoting *Cleveland v. Policy Management Systems Corp.* (5th Cir. 1997) 120 F.3d 513, 517 (*Cleveland I*), judg. vacated and cause remanded *sub nom. Cleveland II, supra,* 526 U.S. 795.)

Levin's argument that *Cleveland II* undermined the test set forth in *Jackson* is unfounded. In *Cleveland II, supra,* 526 U.S. 795, the plaintiff applied for and received Social Security disability insurance (SSDI) benefits from the Social Security Administration (SSA) and represented that she was completely disabled. (*Id.* at pp. 798, 802.) She also sued her former employer alleging that it had terminated her employment without reasonably accommodating her disability in violation of the ADA. (*Cleveland II,* at pp. 798–799.) Her former employer moved for summary judgment and the district court granted the motion "because, in that court's view, [plaintiff], by applying for and receiving SSDI benefits, had conceded that she was totally disabled" and she was estopped "from proving an essential element of her ADA claim, namely, that she could 'perform the essential functions' of her job, at least with 'reasonable accommodation.' " (*Id.* at p. 799.) The Fifth Circuit affirmed, but found that the plaintiff's receipt of SSDI benefits created a rebuttable presumption that plaintiff was judicially estopped from claiming that she was a qualified individual with a disability. (*Id.* at p. 800.)

The United States Supreme Court analyzed the requirements for receipt of SSDI benefits and concluded that an ADA suit claiming that the plaintiff can perform her job with reasonable accommodation may well prove consistent with the plaintiff's statements to the SSA that she could not perform her own job. (*Cleveland II, supra,* 526 U.S. at p. 804.) The United States Supreme Court explained that, "despite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should apply a special negative presumption like the one applied by the Court of Appeals here. That is because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." (*Id.* at pp. 802–803.) The Supreme Court explained that "[a]n SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely 'I am disabled for purposes of the Social Security Act.' " (*Id.* at p. 802.)

Levin argues that *Cleveland II* establishes that judicial estoppel cannot be applied when the inconsistency is not a purely factual statement but also involves a legal conclusion. This is a misreading of the case. The United States Supreme Court expressly states that the court may properly grant summary judgment on the basis of judicial estoppel in the latter situation, but that it may not automatically bar an ADA claim when the plaintiff has

previously filed an SSDI claim. (*Cleveland II, supra,* 526 U.S. at p. 802.) The court stated that "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.' " (*Id.* at pp. 805–806.) "An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability'—that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of her job." (*Id.* at p. 806) The court concluded: "For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." (*Ibid.*)

The specification that, prior to applying the doctrine of judicial estoppel, a court must consider the legal context and provide the party an opportunity to explain any apparent inconsistent position when the inconsistent position does not concern a purely factual statement (*Cleveland II, supra,* 526 U.S. at p. 802) is not inconsistent with *Jackson.* The *Jackson* court, unlike the district court in *Cleveland I,* expressly recognized that the meaning of disability differs in the workers' compensation and ADA contexts. (*Jackson, supra,* 60 Cal.App.4th at p. 187.) However, the *Jackson* court concluded that the plaintiff, who had admitted that his job was stressful and that he would not accept any other position, was estopped from claiming that the employer had failed to provide reasonable accommodation prior to terminating his employment when he had declared in the administrative proceeding that he could not be under any stress. (*Id.* at pp. 189–190.) Thus, under the test set forth in *Cleveland II,* this plaintiff in *Jackson* failed to refute the evidence that his position in the two proceedings were completely inconsistent and the *Jackson* court properly applied judicial estoppel to bar the lawsuit against the employer. (See *Cleveland II, supra,* 526 U.S. at p. 807.)

We therefore reject Levin's argument that the *Jackson* test is no longer good law or has been brought into question by *Cleveland II.* Consequently, the trial court did not err when it applied the *Jackson* test to the facts of this case.

### 3. *Applying the Five-Pronged Test in* Jackson

#### a. *Two Positions by Same Party*

The first element of the *Jackson* test for applying the doctrine of judicial estoppel is that the evidence must establish "the same party has taken two positions." (*Jackson, supra,* 60 Cal.App.4th at p. 183.) In the present case, it is undisputed that Levin sued Aaronson, his English solicitor, for legal malpractice and claimed that Aaronson's malpractice resulted in his losing his

right to ancillary relief under English law. In the present lawsuit, Levin is claiming a community property interest in the exact same assets to which he claimed he had lost his entitlement in the legal malpractice claim. Levin admitted in his opposition to Ligon's summary judgment motion that he took two different positions in the proceedings;[9] in the English proceeding he claimed he had lost his interest in Ligon's assets and in the second proceeding he claimed he had a community property interest in these assets. Thus, the undisputed evidence establishes that this first criterion is satisfied.

### b. *Judicial Proceeding*

The second criterion for applying judicial estoppel set forth in *Jackson* is that the two "positions were taken in a judicial or quasi-judicial administrative proceeding[.]" (*Jackson, supra,* 60 Cal.App.4th at p. 183.) It is undisputed that both of Levin's positions were taken in judicial proceedings. However, Levin's initial position was taken in a foreign court and, although not specifically addressed by either party, we must consider the application of the judicial estoppel doctrine when the first judicial proceeding involved a foreign court.

In our independent research, we have found only one published decision that applied judicial estoppel when the initial proceeding was in a foreign court. In *Rapture Shipping v. Allaround Fuel Trading B.V.* (S.D.N.Y. 2004) 350 F.Supp.2d 369 (*Rapture*), the court considered the defendant's motion to compel arbitration. The plaintiff, a vessel owner, opposed the motion and claimed there was no contract. (*Id.* at p. 372.) However, previously the plaintiff had sued the defendant for breach of contract in a Rotterdam court in the Netherlands. (*Ibid.*) The Rotterdam court dismissed the claim because, even though it had assumed plaintiff's position that an implied contract had been formed, it accepted the defense's position that the arbitration clause applied and the court was not a suitable forum for the action. (*Ibid.*) The plaintiff then sued in the United States District Court and asserted that the Rotterdam decision carried no weight in the action in the United States court. (*Id.* at pp. 372–373.)

The defendants in *Rapture* asserted that judicial estoppel should apply because the plaintiff's current position that no contract had formed was inconsistent with the plaintiff's position in the Rotterdam court that an implied contract had been created. (*Rapture, supra,* 350 F.Supp.2d at p. 374.) The district court stated that "[a]s reluctant as district courts are to upset the decisions of other courts of first instance, courts are even more loathe to do

---

[9] Levin, however, strongly contests that these two positions are completely irreconcilable. (See pt. I.C.3.d., *post*, for discussion of the applicability of this prong.)

so when the arguments smack of inconsistencies seemingly designed to game the system." (*Id.* at p. 373.) Although the Rotterdam court had dismissed the case, the Rotterdam court had accepted the argument that a contract had been formed; the federal district court therefore concluded that the plaintiff had been successful in the prior proceeding for the purposes of the application of judicial estoppel. The *Rapture* court held that the doctrine of judicial estoppel should be applied because to permit the plaintiff now to argue no contract would "risk the possibility of creating the very situation judicial estoppel is meant to avoid—an inconsistent result that compromises the integrity of the judicial system." (*Id.* at pp. 374–375.) The court concluded that the application of judicial estoppel also comported with the strong presumption in favor of extending comity to foreign courts in matters involving international commerce. (*Id.* at p. 375.)

■ Although this is not a case related to international commerce, the policy favoring extending comity to an English court in a family law matter is also strong. "The doctrine of comity prescribes that a court of this nation recognize the judgment of a court of a foreign nation when the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 314 [27 Cal.Rptr.2d 595, 867 P.2d 706]; see also *Hilton v. Guyot* (1895) 159 U.S. 113, 202–203 [40 L.Ed. 95, 16 S.Ct. 139].) In the present case, there is no dispute that England had jurisdiction as both parties were domiciled there at the time and Levin filed his claim of malpractice in England. Consequently, the record contains no evidence that Levin was prejudiced by an unfair tribunal or proceeding.[10] We therefore see no reason for refusing to apply judicial estoppel on the basis that the prior proceeding was in an English court.

---

[10] Levin's malpractice claim resulted because he lost his claim to Ligon's personal property when he married Beatt. Levin has not challenged the English law as violating his due process rights or being otherwise unfair. Rather, he contends that, simply because he sought to have an English court adjudicate Ligon's and his property rights, he should not be deprived of also asserting his community property rights under California law. The question is not whether California's method for distributing the property acquired during marriage is exactly the same as the method used in an English court, but whether Levin was afforded due process in the English proceeding and the English method does not violate California public policy. In fact, however, the English system does not appear to be that different than the California one. At least one court has commented that in 1979, "[t]he factors to be considered in making an award of support are similar under British and California law, the major difference being the attempt under British law to place the parties in the financial position each would have been in had the marriage not broken down. However, in either jurisdiction the court should take all the criteria into account in determining support." (*West v. West* (1979) 92 Cal.App.3d 120, 126 [154 Cal.Rptr. 667] fn. omitted.) Any unfairness or prejudice that Levin could assert because of any alleged loss of his entitlement to Ligon's personal assets was remedied when he received the settlement in the malpractice case against his English solicitors.

Indeed, the policy reasons may be somewhat more compelling when the first hearing is in a foreign court. " ' "[T]he 'essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.' " ' " (*Thomas v. Gordon, supra,* 85 Cal.App.4th at p. 118.) It may be more difficult for the California court to be aware that an inconsistent position was advocated and pursued successfully in a foreign court.

### c. *Prior Success*

 The third requirement for applying the doctrine of judicial estoppel is that "the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true)[.]" (*Jackson, supra,* 60 Cal.App.4th at p. 183.) "Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' [citation], and thus poses little threat to judicial integrity." (*New Hampshire v. Maine* (2001) 532 U.S. 742, 750–751 [149 L.Ed.2d 968, 121 S.Ct. 1808].)

Levin maintains that the malpractice settlement does not constitute a prior success because no tribunal accepted his position. Levin declares that he "has been unable to find a single case in which a *settlement* entered in a prior action is sufficient to find 'judicial success' for purposes of this doctrine." (Fn. omitted.)

The issue of prior success has received disparate treatment by courts. Some federal courts do not consider success as even necessary to the application of the judicial estoppel doctrine. (See, e.g., *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.* (3d Cir. 1996) 81 F.3d 355, 361 ["Whether the party sought to be estopped benefitted from its earlier position or was motivated to seek such a benefit may be relevant insofar as it evidences an intent to play fast and loose with the courts. It is not, however, an independent requirement for application of the doctrine of judicial estoppel"].) At the opposite extreme, the Sixth Circuit does not consider a settlement as satisfying the requirement that the first position must have been successfully asserted. (See, e.g., *Edwards v. Aetna Life Ins. Co.* (6th Cir. 1982) 690 F.2d 595, 599.) However, most federal courts and the California courts do not refuse to apply the doctrine simply because the party settled rather than litigated the prior claim.[11]

---

[11] The United States Supreme Court considered reliance to be a factor courts typically consider when determining "whether the party has succeeded in persuading a court to accept the party's earlier position . . . ." (*New Hampshire v. Maine, supra,* 532 U.S. at pp. 750–751.) However, the Supreme Court stressed that by "enumerating [those] factors, [it was] *not* establish[ing] inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." (*Id.* at p. 751, italics added.)

Despite Levin's assertions to the contrary, courts have applied the doctrine of judicial estoppel when the first proceeding resulted in a settlement. In *Kale v. Obuchowski* (7th Cir. 1993) 985 F.2d 360, a party in prior divorce proceedings had disclaimed any interest in certain property. The court estopped him from claiming an interest in this same property during his partner's bankruptcy proceedings. The party had not won a judgment in the divorce case, but the prior statement had inured to his benefit in the form of a favorable settlement; the property settlement was made and approved by the court on the basis that he did not have an interest in the property in question. (*Id.* at p. 361.) The court rejected the argument that a judicial decision was required, stating that "[p]ersons who triumph by inducing their opponents to surrender have 'prevailed' as surely as persons who induce the judge to grant summary judgment." (*Id.* at p. 362.)

Similarly, the Ninth Circuit held that gaining a favorable settlement in a workers' compensation claim is equivalent to winning a judgment for purposes of applying judicial estoppel. (*Rissetto v. Plumbers and Steamfitters Local 343* (9th Cir. 1996) 94 F.3d 597, 604–605.) The Ninth Circuit held that, since the plaintiff had obtained a favorable workers' compensation settlement based on her assertion that she could not work, she was judicially estopped from asserting a wrongful discharge claim against her employer. (*Id.* at pp. 600–605.)

Our state courts have also applied judicial estoppel when the initial proceeding resulted in a settlement. (See, e.g., *Drain, supra,* 69 Cal.App.4th 950.) In *Drain,* an employee sued his employer on the basis that his employment was terminated because of his race. (*Id.* at p. 953.) Prior to this lawsuit, he had settled his workers' compensation claim and had asserted that he had a continuing disability. (*Ibid.*) The settlement agreement set forth the various injuries that the plaintiff had sustained. (*Ibid.*) The *Drain* court noted that the court in *Jackson* had acknowledged that " 'circumstances may warrant application of the doctrine even if the earlier position was not adopted by the tribunal.' " (*Drain, supra,* at p. 957, quoting *Jackson, supra,* 60 Cal.App.4th at p. 184, fn. 8.) In *Drain,* no factual findings were incorporated in the referee's approval of the parties' compromise and release, but the court held that was not fatal and concluded that the settlement met the requirement for success. (*Drain, supra,* at p. 957.)

We agree with those courts that have held that a settlement in some instances may be equivalent to winning a judgment for purposes of applying judicial estoppel. The pivotal issue is whether it can be established that the party succeeded in the first position or that the position was a basis or important to the settlement. "[T]he fact that plaintiff prevailed by obtaining a

favorable settlement rather than a judgment should have no more relevance . . . ." (*Rissetto v. Plumbers and Steamfitters Local 343, supra,* 94 F.3d at p. 605.)

Levin contends that, even if judicial acceptance of the prior position is not necessary, his malpractice action can have no effect on his partition action against Ligon and he cites *Rice v. Crow* (2001) 81 Cal.App.4th 725 [97 Cal.Rptr.2d 110] (neither collateral estoppel nor res judicata barred plaintiff from suing partners for numerous business torts because defendants were not parties in prior legal malpractice lawsuit that plaintiff settled and dismissed with prejudice) and *Gorman v. Gorman* (1979) 90 Cal.App.3d 454 [153 Cal.Rptr. 479] (wife's legal malpractice claim related to omitted assets in dissolution case could proceed even though pleading and judgment amended in dissolution case to include omitted assets unless it was determined wife actually collected on entire judgment). Neither case concerns judicial estoppel and therefore both cases are inapposite.

In the present case, Levin alleged that the malpractice of Aaronson, his English solicitor, resulted in his losing his right to request ancillary relief. His settlement for approximately $331,813 and the English court's approval of this settlement established that he had "triumph[ed] by inducing [Aaronson] to surrender" (*Kale v. Obuchowski, supra,* 985 F.2d at p. 362). As the lower court noted: "The settlement was clearly approved by the [English] court. The details—it's not laid out in any, you know, 20,000 pounds for this item, 20,000 for that item. I am assuming because Exhibit 5 has a schedule that has some blocked out items, the only thing that could be in there is 205,000 pounds. [¶] In this case, the court approved the following language: 'The defendants do pay or cause to be paid to the plaintiff's solicitors within 14 days the sum of blank in full and final settlement of all of the claims in this action.' "

We therefore conclude that Levin's settlement of his legal malpractice claim satisfied the third prong of *Jackson*'s test.[12]

### d. *Inconsistent Positions*

The fourth criterion in the test for judicial estoppel is that the two positions asserted in the judicial proceedings "are totally inconsistent." (*Jackson, supra,* 60 Cal.App.4th at p. 183; see also *Schulze v. Schulze* (1953) 121

---

[12] Since we conclude that Ligon established that Levin was successful in the prior proceeding in asserting his inconsistent position, we need not address Ligon's argument that success is not a necessary requirement when applying the doctrine. (See, e.g., *International Engine Parts, Inc. v. Feddersen & Co., supra,* 64 Cal.App.4th at p. 351; *Ryan Operations G.P. v. Santiam-Midwest Lumber Co., supra,* 81 F.3d at p. 361.)

Cal.App.2d 75, 83 [262 P.2d 646] [husband asserted judgment of divorce valid in first motion and therefore estopped from claiming in second proceeding that it was void].)

In the present case, Levin alleged in his complaint that he is entitled to the financial assets held by Ligon that were accumulated during their marriage and that were never "adjudicated in England or elsewhere, and are therefore 'omitted assets' now subject to partition by this Court." In his legal malpractice lawsuit in England against Aaronson, Levin took the position that he was entitled to damages from Aaronson because he no longer was entitled to any interest in Ligon's personal assets at the time of their divorce due to his solicitor's negligence. In his declaration submitted in the malpractice proceeding, Levin stated as follows "I have never professed to be knowledgeable about English family law. However, I had consistently been advised that bearing in mind the contributions I had made to the marriage, the sacrifices I had made to support Ms. Ligon's career and the sums I had expended to allow her to accumulate her significant capital assets, I would be entitled to both a capital lump sum and periodical payments, alternatively a lump sum in lieu. It is solely through the negligence of [his English solicitors] that I lost that entitlement. . . ."

In the documents Levin filed with the English court, he set forth the assets held in Ligon's name that were the basis for his claim of damages.[13] He listed the Levi Straus plans as well as other assets. Levin has not challenged the evidence that the assets listed in the document filed with the English court are the exact same assets that are now the subject of his partition complaint.

Levin contends that his position in his malpractice lawsuit was that his solicitor's malpractice prevented him from requesting ancillary relief under English law. However, according to Levin, he never asserted that the malpractice had permanently barred him from seeking division of community property in all forums. Further, he alleges that he is not seeking partition of Ligon's assets, but only partition of the community property assets. He compares the present case to the one in *Third Eye Blind, Inc. v. Near North Entertainment Ins. Services, LLC* (2005) 127 Cal.App.4th 1311 [26 Cal.Rptr.3d 452], where the defendant created an inconsistent position when none existed and the reviewing court reversed the lower court's granting of

---

[13] Levin does not challenge the evidence that the assets serving as the basis of his legal malpractice claim are the same assets he listed in his pleading, which were as follows: "pension plans, deferred compensation, Long Term Plans, Stock Repurchase, investment accounts, NatWest accounts, Wells Fargo investment portfolio, Levi Strauss Credit Union, and other assets accumulated during marriage."

judgment on the pleadings. *Third Eye Blind* is unavailing.[14] *Third Eye Blind* concerned pleading inconsistent allegations in the alternative, which is clearly permitted. (*Id.* at p. 1323.) The present case involves inconsistent positions in two separate judicial proceedings.

■ English law does not recognize community property and therefore Levin did not label the lost assets as a loss of entitlement to community property. In the English court, Levin claimed Aaronson's malpractice cut off any interest he had in the financial assets held in Ligon's name, and in the present case he is claiming that he continues to have a community property interest in these same financial assets. The assets at issue in both the English and California proceedings are identical. Thus, although the legal name for the assets or the name of the statutory right for a claim to these assets may differ, Levin's position in the malpractice action was completely contrary to the position he is now advocating in the California proceeding.

Contrary to Levin's assertion, the present case is not analogous to the situation in *Cleveland I, supra,* 120 F.3d 513. In *Cleveland I,* the lower court automatically granted summary judgment because it found applying for and receiving SSDI benefits was inconsistent with a claim under the ADA without providing the plaintiff with an opportunity to establish that the positions were not inconsistent. (See *Cleveland II, supra,* 526 U.S. at p. 799.) Here, the trial court did not simply presume that the financial assets Levin claimed were lost due to Aaronson's negligence were the same assets at issue in the present lawsuit. Rather, the undisputed evidence submitted to the lower court established that the assets at issue in both proceedings were identical.

---

[14] Levin cites and relies on a number of cases that are factually dissimilar. (See, e.g., *Bell v. Wells Fargo Bank* (1998) 62 Cal.App.4th 1382 [73 Cal.Rptr.2d 354]; *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 953–956 [62 Cal.Rptr.2d 142] [plaintiff, an airline pilot with AIDS, was not estopped from lawsuit claiming employer failed to offer reasonable accommodation after employment terminated even though plaintiff had received Social Security and disability benefits because positions were not so clearly inconsistent that one necessarily excluded other]; *Claxton v. Waters* (2004) 34 Cal.4th 367, 379, fn. 3 [18 Cal.Rptr.3d 246, 96 P.3d 496] [judicial estoppel inapplicable because plaintiff took *same* position that she was sexually harassed in course of employment in both workers' compensation proceeding and civil action against defendants]; *Daar & Newman, supra,* 129 Cal.App.4th at p. 491 [moving to quash summons on behalf of client for lack of sufficient contacts did not estop law firm from subsequently suing client for unpaid legal fees because argument in second proceeding for specific jurisdiction is based on different claim and different facts]; *Kitty-Anne Music Co. v. Swan, supra,* 112 Cal.App.4th at p. 35 [judicial estoppel inapplicable against party who successfully opposed summary adjudication motion by claiming triable issues of material fact and then asserted no triable issue of material fact in support of his own motion for summary judgment because party did not attempt to obtain an unfair advantage and two positions were not inconsistent]; *Aguilar v. Lerner, supra,* 32 Cal.4th at p. 987 [plaintiff's two positions of first rejecting arbitration pursuant to the Mandatory Fee Arbitration Act (MFAA) and then relying on the MFAA-based client protections were not completely inconsistent because resisting arbitration was a right under MFAA, which made arbitration voluntary for client].)

Similarly, the present case is distinguishable from those cases cited by Levin that refused to apply the doctrine of judicial estoppel because the evidence did not establish the positions in the two hearings were completely different. (See, e.g., *Bell v. Wells Fargo Bank, supra,* 62 Cal.App.4th 1382 [disability application for insurance and Social Security by plaintiff who was HIV positive did not necessarily estop plaintiff from claiming disability employment discrimination because meaning of disability on applications was unclear].) Levin's positions in the two proceedings—one claiming he is entitled to damages because of losing his right to the personal property held in Ligon's name and the other claiming that he is entitled to his share of these identical assets—are so irreconcilable that "one necessarily excludes the other" (*Prilliman v. United Air Lines, Inc., supra,* 53 Cal.App.4th at p. 960).

Levin also argues that his positions are not inconsistent because his interest in the community property vested at the time the property was acquired and he continued to hold these assets with Ligon as tenants in common. (See *Henn v. Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10], superseded by statute on another issue.) Levin relies on *Henn,* but this decision was concerned with unadjudicated marital property that had not been mentioned in the pleadings or in the judgment for the divorce. (*Id.* at p. 330.) The court held that collateral estoppel and res judicata did not apply to bar the wife's claim to her community portion of the husband's pension because this particular asset had been entirely omitted from the earlier division of property in the dissolution action and, after the dissolution, they held the property as tenants in common. (*Id.* at p. 331.) In the present case, there was no adjudication of the personal property held in Ligon's name because Levin dismissed his claim for ancillary relief when he realized that, under English law, his remarriage prevented him from making any claim to this property. Thus, Levin was aware of this property and voluntarily dismissed in the English proceedings his claim to these assets.

Finally, Levin contends that the evidence does not satisfy the fourth prong of the *Jackson* test because the two positions he took were legal, not factual. As discussed *ante,* a majority of federal courts have applied the doctrine even when the positions were legal (*Helfand v. Gerson, supra,* 105 F.3d at p. 535), but at least some California Courts of Appeal have stated that the inconsistent position "generally must be factual in nature." (*ABF Capital Corp. v. Berglass, supra,* 130 Cal.App.4th at p. 832.)

In the present case, the positions Levin took are mixed questions of law and fact and therefore the foregoing requirement is met. Indeed, rarely will the position involve a purely factual statement. Levin claimed that he was entitled to damages from Aaronson on the grounds that he no longer had any interest in or claim to the personal assets held in Ligon's name at the time of

their divorce. He now claims that he never lost his interest to those very same assets. Thus, he attempted to gain advantage in one proceeding by asserting one set of facts and is now, in the second proceeding, asserting a completely different set of facts when it is to his advantage.

The present situation differs from that in *California Amplifier, supra,* 94 Cal.App.4th 102, a case cited by Levin. In *California Amplifier,* the two different positions taken were strictly legal. In the underlying class action in *California Amplifier,* a corporation and its officers asserted that liability for making false and misleading statements to inflate the price of corporate stock in violation of Corporations Code sections 25400 and 25500 required making a knowingly false statement. (*California Amplifier, supra,* at pp. 117–118.) In the claim against the insurer for denying coverage in the settlement of the class action, the corporation argued that liability under the statute only required negligence. (*Id.* at p. 118.) Although the reviewing court affirmed the insurer's judgment on the pleadings on other grounds, it refused to apply the doctrine of judicial estoppel to bar the corporation from arguing the statute required negligence only. (*Ibid.*) The court held that changing legal arguments was a reasonable litigation tactic, which did not undermine the integrity of the judicial process. (*Ibid.*)

In contrast to *California Amplifier,* Levin did not merely make alternative legal arguments. He did not simply argue in the first proceeding that the English law barred his interests in Ligon's financial assets and then argue in the second lawsuit that the English law does not bar his community property claim. Rather, he argued he was entitled to damages based on his lost claim to personal assets accumulated during his marriage and held in Ligon's name. After receiving compensation in the first proceeding on the basis of his declaration that he had lost his right to these assets, he is now claiming that he never lost his right to these exact same assets and that he owns them as a tenant in common with Ligon. Accordingly, in the present case, judicial estoppel was properly invoked to preserve the integrity of the judicial system and to avoid the risk of inconsistent results.

e. *Ignorance, Fraud, or Mistake*

The final prong of the *Jackson* test for applying judicial estoppel is that the first position must not be taken as a result of ignorance, fraud, or mistake. (*Jackson, supra,* 60 Cal.App.4th at p. 183.) Levin does not address the application of this prong to the facts of this case in his briefs before this court. He therefore waives any challenge to the judgment on this basis. Further, Levin's statement submitted to the English court indicated that he was aware that his marriage to Beatt foreclosed any claim he had against Ligon for ancillary relief under the English law. Thus, there is no evidence in this record of ignorance, fraud, or mistake as an issue.

### 4. *Windfall and Prejudice*

Levin argues that, even if the criteria set forth in *Jackson* are met, equity demands that the court reject applying the doctrine of judicial estoppel. Levin maintains that judicial estoppel should not be applied absent any proof of prejudice or intentional wrongdoing. In addition, he asserts that it should not be used when it will result in a windfall to the defendant and contravene the favored status of community property in California jurisprudence.

Levin emphasizes that a goal of judicial estoppel is not simply to protect the integrity of the court, but also to protect the parties from an opponent's unfair strategies. (*Aguilar v. Lerner, supra,* 32 Cal.4th at p. 986.) When there is no intentional wrongdoing, he asserts that judicial estoppel should not be applied. (See, e.g., *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1018 [79 Cal.Rptr.2d 544].) He maintains this doctrine should not be applied to enable one party to avoid liability. (*Daar & Newman, supra,* 129 Cal.App.4th at p. 491.) He claims the record is devoid of any evidence of any wrongdoing on his part and he asserts, without providing any evidence, that Ligon has unclean hands with regard to her fiduciary duties to him with respect to his community property interests.[15]

As discussed extensively *ante,* the doctrine of judicial estoppel " 'does not require reliance or prejudice before a party may invoke it.' " (*Billmeyer v. Plaza Bank of Commerce, supra,* 42 Cal.App.4th at p. 1092; see also *Thomas v. Gordon, supra,* 85 Cal.App.4th at p. 118; *Drain, supra,* 69 Cal.App.4th at p. 955.) Windfall and prejudice are factors the trial court *may* consider when exercising its discretion to apply the doctrine of judicial estoppel.

With regard to wrongdoing, contrary to Levin's assertion, the present record does contain evidence of Levin's wrongdoing. Levin asserts the record contains no evidence of his misleading Ligon, but that is not the definition of wrongdoing for the purposes of applying judicial estoppel. Wrongdoing for the purposes of judicial estoppel results when the party deliberately takes inconsistent positions. (See, e.g., *Cloud v. Northrop Grumman Corp., supra,* 67 Cal.App.4th at pp. 1017–1018 [inconsistent positions result from " ' "intentional self-contradiction" ' " or " 'deliberate inconsistencies' " as a means

---

[15] Levin does claim that Ligon has refused to reveal the current value and location of the community assets in question. However, he fails to support this claim with evidence.

Levin again argues that this property is owned jointly by Ligon and him as tenants in common. Presumably he is, again, relying on *Henn v. Henn, supra,* 26 Cal.3d 323. However, as discussed *ante,* the present situation is unlike that in *Henn,* which concerned the application of res judicata and collateral estoppel to property that was omitted from the pleading and from the property settlement. (*Id.* at p. 330.) As already stressed, this record does not contain evidence that Ligon hid any assets from Levin. Moreover, in the English proceedings, Levin voluntarily dismissed his claim for ancillary relief.

of obtaining unfair advantage and doctrine does not apply when prior position taken because of good faith mistake rather than scheme to mislead court].) " 'Asserting inconsistent positions does not trigger application of judicial estoppel unless "intentional self-contradiction is . . . used as a means of obtaining unfair advantage." [Citation.] Thus, the doctrine of judicial estoppel does not apply "when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court." [Citation.] An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing.' " (*Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th 497, 509–510 [85 Cal.Rptr.2d 352], quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co., supra,* 81 F.3d 355 at p. 362.)

In the present case, as discussed *ante,* there is no evidence that Levin's lawsuits were the result of a good faith mistake. Rather, he intended to mislead the court by arguing he is entitled to assets while knowing he had told a different court that he was entitled to damages because his solicitor's negligence resulted in his losing any claim to any of these same assets. He clearly is seeking an unfair advantage in that he admitted, under English law, he had no interest in this property. Thus, Levin was the planner or originator of his own inconsistent positions and deliberately attempted to take advantage of these inconsistent positions. His lawsuits were therefore not the result of good faith mistake.

Levin also argues that this equitable doctrine should not be used to provide Ligon with a windfall. To permit one party "to receive an unjust windfall in the name of equity [is] a result abhorrent to modern jurisprudence." (*In re Marriage of Umphrey* (1990) 218 Cal.App.3d 647, 659 [267 Cal.Rptr. 218].) Levin complains that the result is to give Ligon all of the personal property held in her name that was accumulated during the marriage. Levin avows, without any citation to the record, that this amounts to transferring to Ligon as much as $2 million, which he maintains should belong to him. Moreover, Levin protests that there is no evidence that the settlement amount was equal to his community property interest and California courts have always recognized the protected and favored status of dividing community property (see, e.g., *In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 423 [174 Cal.Rptr. 493, 629 P.2d 1]).

In the present case, Ligon is not really receiving a windfall since, under English law, Levin gave up his right to these assets when he remarried prior to applying for ancillary relief. Thus, the fact that remarriage does not affect one's right to community property in California is not particularly significant because, Levin, himself, agreed to have an English court divide the property acquired by Ligon and him during their marriage.

Levin's argument that the settlement does not equal his share of the assets he alleges are community property is also not especially persuasive. He did not have to settle if he did not like the amount or believed the sum did not adequately compensate him for his alleged loss. Further, if the amount received in the first proceeding had to equal the amount that could be received in the second proceeding, judicial estoppel would rarely, if ever, be applied. Thus, for example, courts that have held a settlement of a workers' compensation claim estops the plaintiff from asserting wrongful discharge against an employer have never considered whether the settlement in the administrative proceeding equals the damages that could be collected against the employer in the second lawsuit. (See, e.g., *Rissetto v. Plumbers and Steamfitters Local 343, supra,* 94 F.3d at pp. 604–605; *Drain, supra,* 69 Cal.App.4th at p. 953.)

We conclude that this is not a situation where considerations of equity mitigate against applying the doctrine of judicial estoppel. (See *M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One, supra,* 111 Cal.App.4th at p. 469 [where litigant is uncertain that a contractual provision allows recovery of attorney fees, it is not improper to assert a claim based on that provision, and considerations of equity should permit party to assert contrary positions if interests become reversed]; see also *California Amplifier, supra,* 94 Cal.App.4th at p. 118.) Here, considerations of equity support applying the doctrine as Levin received compensation based on representations to the court that he had lost all his rights to certain financial assets, and now wants to recover additional compensation by arguing that he has an interest in these very same financial assets.

As the trial court stated, "[t]he argument that you don't like the British law really is not terribly persuasive because both parties went over to England, they both lived there, they both worked there, they both went into the British courts and voluntarily selected that forum to adjudicate the issues of their marriage." We therefore affirm the trial court's ruling that judicial estoppel bars Levin's claim for partition of Ligon's financial assets.

## D. *Attorney Fees and Request to Transfer Matter to Family Court*

Levin requests this court to award him attorney fees pursuant to Family Code sections 271,[16] 2030–2032, even if the judgment below is otherwise

---

[16] Family Code section 271 reads: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court

affirmed. Rather than present any argument, Levin simply states that he is basing this request on the reasons set forth in his motion for attorney fees and costs in the lower court and cites to 147 pages in the record. It is not the duty of a reviewing court to search the record for evidence on a point raised by a party whose brief makes no reference to the specific pages where the evidence can be found. (*Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1093 [234 Cal.Rptr. 835].) Further, other than cite the statutes, Levin provides no authority to support his argument. Thus, this argument for attorney fees is deemed to be without foundation and abandoned. (*Kensington University v. Council for Private Postsecondary etc. Education* (1997) 54 Cal.App.4th 27, 42–43 [62 Cal.Rptr.2d 582].)

Levin also requests that we direct the trial court to transfer this case to family court. Since we are affirming the judgment, there is no case to transfer.

## II. *Judgment on the Pleadings*

The trial court granted Levi Strauss's motion for judgment on the pleadings. Levin's opening brief in this court does not raise any issues or argument related to the trial court's granting of the judgment on the pleadings. Levi Strauss therefore argues that Levin has waived this issue on appeal. Levin, for the first time, challenges the trial court's ruling regarding Levi Strauss in his reply brief in this court. In his reply brief, he argues that the issue is preserved for appeal because his notice of appeal was from the judgment, which included the judgment in favor of Levi Strauss.

It is elementary that points raised for the first time in a reply brief are not considered by the court. (See, e.g., *Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 [67 Cal.Rptr.2d 350].) Accordingly, Levin has waived raising on appeal any challenge to the trial court's ruling regarding Levi Strauss. Moreover, since we are affirming the grant of summary judgment in favor of Ligon, Levin has no interest in the Levi Strauss plans and therefore the trial court did not err in granting the motion for judgment on the pleadings.

---

shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award. [¶] (b) An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard. [¶] (c) An award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property."

## DISPOSITION

The judgment is affirmed. Levin is to pay the costs of appeal.

Kline, P. J., and Richman, J., concurred.

A petition for a rehearing was denied July 31, 2006, and appellant's petition for review by the Supreme Court was denied September 13, 2006, S145731.